**Mary E. BJUSTROM, individually and on behalf of all others similary situated, Plaintiff–Appellant,**

v.

**TRUST ONE MORTGAGE CORP., Defendant–Appellee.**

**No. 01–36076.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 2002.

Filed March 20, 2003.

Barry G. Reed and Hart L. Robinovitch, Zimmerman Reed, Scottsdale, AZ; John H. Bright, Mark A. Griffin, and Alexander Perkins, Keller Rohrback, Seattle, WA, for the plaintiffs-appellants.

Thomas M. Hefferon, Goodwin Procter, Washington, DC; Scott Weaver, Jameson, Babbitt, Stites & Lombard, Seattle, WA; James W. McGarry, Boston, MA, for the defendant-appellee.

Before HILL,* GOULD, and BERZON, Circuit Judges.

Opinion by HILL; Concurrence by Judge BERZON.

## OPINION

HILL, Circuit Judge.

This is an appeal from an order granting summary judgment to Trust One Mortgage Corporation (Trust One) in a class action involving residential mortgages. The class is composed of all mortgagors whose Federal Housing Administration (FHA) mortgage loans were funded by Trust One and whose mortgage brokers were paid compensation in excess of 1% of the aggregate loan amount (the Bjustrom class). *See* note 6 *infra.*

Mary E. Bjustrom is the representative class member. The Bjustrom class asserted two causes of action: (1) breach of contract; and (2) violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, 2607. Bjustrom, in her individual capacity, asserted a third cause of action under the Washington State Unfair and Deceptive Trade Practices Act (state consumer protection act), Wash. Rev.Code § 19.86.

The district court granted summary judgment in favor of Trust One on all three claims. We affirm the judgment of the district court as to the two claims made by the Bjustrom class, breach of contract and violation of RESPA. However, we conclude that the court erred in including Bjustrom's state consumer protection act claim in its order of summary judgment. Such claim was not contained in Trust One's motion for summary judgment. We remand that claim to the district court for further proceedings as to Bjustrom, individually only. We also *sua sponte* vacate the order granting certification to the Bjustrom class.

## I.

There are no disputed facts. Trust One is an Irvine, California, mortgage lending institution that funds FHA loans. It primarily operates through the use of mortgage brokers who refer loans to Trust One for funding. Typically, the mortgage broker performs a variety of functions, providing legitimate goods, facilities and services, in order to "package" loan applications for funding, *i.e.*, paying fees for recording, title examinations, credit reports, surveys, appraisals, etc.

Mortgage brokers are paid for this work. The amount of compensation they receive is regulated by the Department of Housing and Urban Development (HUD), the agency charged with FHA oversight. Typically, mortgage brokers charge a 1% loan origination fee paid directly to the broker by the borrower. The Bjustrom class maintains that, for FHA loans, an FHA regulation forbids lending institutions, such as Trust One, from paying mortgage brokers any compensation for any service in excess of 1% of the mortgage amount, and bar mortgage brokers from receiving any such additional compensation *See* 24 C.F.R. § 203.27(a)(2)(i).[1]

---

* The Honorable James C. Hill, Senior United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation.

1. The FHA regulation provides:

§ 203.27 *Charges, fees or discounts.*
(a) The mortgagee may collect from the mortgagor the following charges, fees or discounts:

At issue are the lender-paid broker fees denominated as yield spread premiums (YSP)[2] and service release premiums (SRP).[3] Both are disclosed to a borrower on a HUD–1 Settlement Statement.

For example, in Bjustrom's case, in order to purchase real property in 1999, she obtained an FHA loan from Trust One, through her mortgage broker, Mortgage Specialists, Inc. (Mortgage Specialists), in the amount of $140,542.00 at an interest rate of 8%.[4] As security for the loan, Bjustrom executed a Deed of Trust in the subject property in favor of Trust One.

Bjustrom's HUD–1 Settlement Statement reflects a total of $7,478.27 in settlement charges. Among these charges are various taxes and fees, including a $1,374.00 origination fee, paid directly to Mortgage Specialists. The HUD–1 Statement also reflects a YSP of $702.71 and a SRP of $1,786.78 to be paid to Mortgage Specialists, albeit in a separate category, not listed in a category of services to be paid by the borrower.

Bjustrom contends that the 1% origination fee operates as a cap, both under a breach of contract theory, implicitly incorporating 24 C.F.R. § 203.27(a)(2)(i) into paragraph 8 of her Deed of Trust, and under RESPA, 12 U.S.C. § 2607(a)-(c), governing illegal kickbacks by lenders to brokers. Because she paid Mortgage Specialists its 1% origination fee of $1,374.00, Bjustrom argues it is *ipso facto* barred from receiving any additional monies, *i.e.*, both the $702.71 YSP and the $1,786.78 SRP from Trust One.[5]

The district court certified the Bjustrom class, finding that a question of law concerning the FHA loan 1% origination fee cap was a sufficient uniform factual and

---

. . .
(2) A charge to compensate the mortgagee for expenses incurred in originating and closing the loan, the charge not to exceed: (i) $20 dollars or one percent of the original principal amount of the mortgage . . . whichever is the greater.
24 C.F.R. § 203.27(a)(2)(i).

**2.** A yield spread premium (YSP) is a payment made by a lender to a mortgage broker in exchange for that broker's delivering a mortgage ready for closing that is at an interest rate above the par value loan being offered by the lender. *See Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1007 (9th Cir.2002). The YSP is the difference between the par rate and the actual rate of the loan; this difference is paid to the broker as a form of bonus. *Id.* at 1007–08. A YSP is typically a certain percentage of the loan amount; therefore, the higher the loan is above par value, the higher the YSP paid the mortgage broker. *Id.* By choosing among various lenders and interest rates, a broker may, in effect, control his fees and, in that fashion, compete with other brokers. *Id.* For example, "a loan of 8% and no points where the par rate is 7.50% will command a greater [yield spread] premium for the broker than a loan with a par rate of 7.75% and no points." *See RESPA Statement of Policy 1999–1 Regarding Lender Pay-*

*ments to Mortgage Brokers,* 64 Fed.Reg. 10080, 10081 (March 1, 1999) (HUD/SOP I).

**3.** A service release premium (SRP) is a payment made by a lender to a mortgage broker that is based on the amount of the loan referred to the lender to service. *See Bjustrom v. Trust One Mortg. Corp.*, 178 F.Supp.2d 1183, 1186 (W.D.Wash.2001). A larger loan has more valuable servicing rights because the total interest paid by the borrower is greater. *Id.*

**4.** Bjustrom is a well-educated, sophisticated purchaser of real estate investment properties. It was her desire to close the loan in two weeks. She turned to Mortgage Specialists with whom she had previously done business. Although comparable loans in the Seattle area at the time were 7%, Bjustrom chose the FHA loan because it required less cash up front and met her time constraints.

**5.** As the district court noted, there is no dispute that Trust One immediately paid Mortgage Specialists the YSP and the SRP, and that these premiums are the expected profit from interest payments to be made by Bjustrom in the future to Trust One under the terms of her note and Deed of Trust.

legal issue applicable to each Bjustrom class member's loan.[6] After hearing on the merits of the breach of contract and RESPA claims, the district court granted summary judgment for Trust One.[7] This appeal follows.

## II.

■ The parties agree that the facts are not in dispute. We review *de novo* pure questions of law decided on summary judgment. *See Jensen v. Lane County*, 222 F.3d 570, 573(9th Cir.2000).

## III.

■ Under the breach of contract claim made by the Bjustrom class, Bjustrom contends that by signing her Deed of Trust, the FHA regulation that provides a cap of 1% of the original principle amount of the mortgage, 24 C.F.R. § 203.27(a)(2)(i), is implicitly incorporated into paragraph 8 of the Deed of Trust, and

that Trust One breached the contract by charging fees in excess of 1% when it paid a YSP and SRP to Mortgage Specialists.

This breach of contract claim fails under the unambiguous language of the regulation itself which limits only fees "collect[ed] from the mortgagor" (the Bjustrom class) by the mortgagee (Trust One). 24 C.F.R. § 203.27(a)(2)(i). The YSPs and the SRPs at issue here were not collected from Bjustrom class members, but were instead collected from Trust One by Mortgage Specialists.

We agree with the persuasive analysis set out in Part II of the opinion by the district court that a plain reading of the regulation itself means *directly* collected, not *indirectly* collected. *See Bjustrom,* 178 F.Supp.2d at 1190(to assert "that all borrowers ultimately pay for the yield service and service release premiums through higher interest rates is too strained a reading of 'collect' to compel inclusion of such *indirect* payments").[8] *Cf. Geraci v. Hom-*

6. Specifically, the Bjustrom class consists of: All persons residing in the United States who, dating back the length of the applicable statute of limitations for a breach of contract claim, from the date the Complaint was filed through and including the present:
1. Obtained an FHA mortgage loan funded by Trust One;
2. Written on a standard FHA mortgage contract similar to Plaintiff's in limiting the fees and charges collected to those authorised by the Secretary of [the Department of Housing and Urban Development] HUD;
3. Where the loan was registered with Trust One for funding by a mortgage broker or loan correspondent;
4. Where the aggregate fees charged and collected for originating and processing the loan by way of direct or indirect fees (including, any loan origination fee or yield spread premium tied to the interest rate on the loan, however denominated) exceeded 1% of the aggregate loan amount.

The district court also certified a RESPA subclass that includes:
All persons who, within one year from the date the Complaint was filed through and including the present:

1. Obtained an FHA mortgage loan funded by Trust One;
2. Where the loan was registered with Trust One for funding by a mortgage broker or loan correspondent;
3. Where a yield spread premium, service release premium and/or lender paid broker fee, however denominated, was paid by Trust One to the mortgage broker or loan correspondent;
4. Where the aggregate loan origination fees (all fees for loan origination and processing services, however denominated), equal to or exceeding 1% of the loan amount, were also charged.

7. The district court inadvertently granted summary judgment to Trust One on all three claims. This was error as to the consumer state law claim not included in the Bjustrom class action, and not subject to the motion for summary judgment.

8. It is unfortunate that a HUD regulation, more than a half-century old, has survived to provoke confusion. Were it to state what the Bjustrom class contends that it states, *i.e.*, a flat limit on all charges, it would defeat the purpose of RESPA, which is, on the one hand,

*estreet Bank,* 203 F.Supp.2d 1211, 1214–15 (W.D.Wash.2002) (VA loan).

## IV.

■ There have been many lawsuits and class actions filed against residential mortgage lenders, alleging that their payment of YSPs to mortgage brokers violated RESPA. Section 8(a) of RESPA prohibits kickbacks and referral fees. *See* 12 U.S.C. § 2607(a).[9] Section 8(c) of RESPA allows payment "for services actually performed in the making of a loan." *See* 12 U.S.C. § 2607(c).[10] However, the plain language of RESPA does not directly address whether the payment of a YSP (or a SRP in this case) is a violation.

In response to these complaints from borrowers that they may have been required to pay more for their loan than

authorized, HUD released its *RESPA Statement of Policy 2001–1: Clarification of Statement of Policy 1999–1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b),* (HUD/SOP II) to "eliminate any ambiguity concerning [HUD's] position with respect to . . . yield spread premiums and . . . overcharges by settlement service providers. . . ." 66 Fed. Reg. 53052 (October 18, 2001).[11] HUD reiterated its earlier position "that yield spread premiums are not *per se* legal or illegal," *id.* at 53052, and, that they "can be a useful means to pay some or all of a borrower's settlement costs." *Id.* at 53054.

HUD/SOP II also confirmed the two-part test set forth in *RESPA Statement of Policy 1999–1 Regarding Lender Pay-*

---

to encourage affordable housing, and, on the other, to discourage unscrupulous mortgagees.

At one time HUD considered bringing its regulatory pattern into the new millennium when it proffered a proposal to eliminate the 1% origination fee entirely. *Bjustrom,* 178 F.Supp.2d at 1192(citing *Deregulation of Mortgagor Income Requirements,* 54 Fed.Reg. 38646 (Sept. 20, 1989)).

(Its only reason for not doing so seems to have been that it did not need to be eliminated because it didn't really amount to anything, anyway!).

Since a shortfall in mortgage origination costs can easily be recovered through adjustments to the mortgage loan interest rate, mortgagors are currently bearing loan origination costs (directly through loan origination fees and indirectly through mortgage interest rates) at the competitive level set in the marketplace. Therefore, the elimination of the loan origination fee cap would be expected to cause no change in the total origination cost for mortgagors. *Id.* at 38646–7.

Thus, content with obfuscation, HUD left vestiges of old cautions to require the work of innumerable district courts and a number of courts of appeal to penetrate the haze.

9. RESPA Section 8(a) reads:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person. 12 U.S.C. § 2607(a).

10. RESPA Section 8(c) reads in pertinent part:

Nothing in this section shall be construed as prohibiting (1) the payment of a fee . . . (C) by a lender to its duly appointed agent for services actually performed in the making of a loan, [or] (2) the payment to any person of . . . compensation or other payment for goods or facilities actually furnished or for services actually performed. . . . . 12 U.S.C. § 2607(c).

11. HUD/SOP II was issued, at least partially, in response to the holding of *Culpepper v. Irwin Mortg. Corp.,* 253 F.3d 1324 (11th Cir. 2001) that, in order to satisfy RESPA, a YSP paid to the mortgage broker by the lender had to be linked to specific services provided by the broker. The rule announced in HUD/SOP II, in effect, overrules the holding of *Culpepper. See Heimmermann v. First Union Mortg. Corp.,* 305 F.3d 1257, 1263 (11th Cir.2002).

*ments to Mortgage Brokers*, 64 Fed.Reg. 10080(March 1, 1999) (HUD/SOP I). Under the two-part test, a court is required to consider (1) "whether goods or facilities were actually furnished or services were actually performed for the compensation paid" and (2) "whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed." *Id.* at 10084; HUD/SOP II at 53054.

## V.

The district court in this case was writing on the proverbial clean slate with this issue of first impression, construing HUD/SOP II. Since that time there have been a number of cases on this subject, reaching the same result as reached by the district here, including one in this circuit, *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004 (9th Cir.2002). A more recent case, *Lane v. Residential Funding Corp.*, 323 F.3d 739 (9th Cir.2003), with somewhat similar facts, relies on *Schuetz* and is consistent with what we hold today.

Other circuits have rung in, consistent with our opinion in *Schuetz*. *See Glover v. Std. Fed. Bank*, 283 F.3d 953 (8th Cir. 2002); *Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257 (11th Cir. 2002); *cf. Krzalic v. Republic Title Co.*, 314 F.3d 875 (7th Cir.2002); *Haug v. Bank of Am., N.A.*, 317 F.3d 832 (8th Cir.2003); *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5th Cir.2003).

## VI.

We find that the facts of *Schuetz* are virtually indistinguishable from the facts in the present case.[12] In *Schuetz*, the plaintiff had obtained a federally related mort-

gage loan from a mortgage lender through a mortgage broker. Schuetz paid direct fees to the mortgage broker. In addition, the lender paid the mortgage broker a YSP. Schuetz brought a class action against her mortgage lender claiming that the YSP violated RESPA Section 8(a), 12 U.S.C. § 2607(a), as a kickback for referral of a federally-related mortgage loan. *See Schuetz*, 292 F.3d at 1006.

The *Schuetz* district court, finding that the issue would turn on whether or not the YSPs paid by the mortgage lender to the mortgage broker were compensation for facilities or services actually performed, determined the issue to be too fact-intensive to be resolved on a class-wide basis and denied class certification. *Id.* at 1008. The district court granted summary judgment in favor of the lender on Schuetz's claim that its payment of the YSP was actually a referral of business fees by the mortgage broker. Applying the two-part test set forth in HUD/SOP I, the district court concluded that: (1) the mortgage broker performed services that contributed to the transaction, and (2) that the total compensation received by the mortgage broker, which included the YSP, was reasonably related to the services provided. *Id.* at 1006.

This court, in *Schuetz*, using *Chevron* deference, resolved that the two-prong test contained in HUD/SOP I, as reaffirmed by HUD/SOP II, provided the appropriate standard of liability for YSPs under RESPA. *Id.* at 1014; *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

---

**12.** *Schuetz* differs from the facts of this case in two ways: it pertains only to YSPs (not YSPs and SRPs); and the district court opinion was issued after HUD/SOP I, yet before HUD SOP II. The procedural posture of

*Schuetz* varies from our case in three ways: it is not a class action; it raises no breach of contract claim; and it includes no state consumer law claim.

In applying the first prong, we found that there was substantial evidence to support the conclusion that Schuetz's mortgage broker had provided her with a host of compensable goods, facilities and services. There was no evidence to the contrary. *Schuetz,* 292 F.3d at 1014.

Under the second prong, the record demonstrated that the mortgage broker obtained for Schuetz the best interest rate available at the time for her specific needs. *Id.* The record also reflects that the broker, in its need to be compensated, would not have originated her loan for only the fees she paid directly at closing.[13] *Id.* Therefore, the payment of YSPs to the mortgage broker by the mortgage lender did not violate RESPA Section 8. *Id.*[14]

## VII.

■ We apply *Schuetz* to the facts in this case. We now know that RESPA requires a loan-specific analysis of whether total mortgage broker compensation from all sources is reasonable. *See* HUD/SOP II. No *per se* rule exists in applying RESPA Section 8 to YSPs. *See Schuetz,* 292 F.3d at 1013 n. 6 (citing *Glover,* 283 F.3d at 965("HUD's two-part test is fully consistent with RESPA. Reviewing services performed and their value on a case-by-case basis does not run afoul of the proscription stated in Section 8(a) prohibiting payments for referrals.")).

As to the first prong, there is substantial evidence that Mortgage Specialists provided Bjustrom with a host of compensable goods, facilities, and services that contrib-

uted to the transaction. She was pleased to obtain her FHA loan on an expedited two-week basis. She had received good service from them in prior real estate transactions. Bjustrom also paid more than $1,000 less cash up front. There is no evidence to the contrary.

As to the second prong, the record demonstrates that, although the FHA loan rate of 8% was not the best rate in the Seattle market at the time, Bjustrom chose it based upon her self-imposed time constraints and her desire to pay as little cash up front as possible. Bjustrom offered no evidence to prove that her mortgage broker's services weren't worth what it was paid. To the contrary, the record reflects that she had reviewed the YSPs and the SRPs paid by Trust One to Mortgage Specialists and "was satisfied with the numbers." As the total compensation received by Mortgage Specialists was reasonably related to the services it provided, the second prong is also met.

Mortgage Specialists did all the work "packaging" the loan that would have been done by Trust One if Trust One had not used a mortgage broker in the transaction. The claims of the Bjustrom class, if valid, would make it unlawful for such a lender to pay its employees for the work they would do in preparing a proposed loan for closing. Under facts common to the members of the Bjustrom class, the district correctly concluded that payment of the YSPs and SRPs did not violate RESPA.

---

13. The evidence in *Schuetz* indicated that the total compensation paid to the mortgage broker, including its indirect YSP fees, was consistent with local practice and reasonably related to the value that the mortgage broker contributed to Schuetz's transaction. *Schuetz,* 292 F.3d at 1014. In addition, Schuetz offered no evidence to the contrary nor any to prove that her mortgage broker's services weren't worth what it was paid. *Id.*

14. A YSP payment made to a mortgage broker is just one element of his or her total compensation to be considered in evaluating overall reasonableness "in relation to price structures and practices in similar transactions and in similar markets." HUD/SOP I, 64 Fed.Reg. at 10084; HUD/ SOP II, 66 Fed. Reg. at 53055. Presumably, market forces should make the total compensation reasonable.

## VIII.

Based upon the foregoing, we affirm the judgment of the district court granting summary judgment to Trust One on the breach of contract claim and the RESPA violation claim made by the Bjustrom class. We remand Bjustrom's individual state consumer law claim to the district court for further proceedings on her behalf.

Although the issue of whether or not the Bjustrom class was properly certified is not before us, we *sua sponte* vacate the Bjustrom class certification. Those purported Bjustrom class members, can, if they wish, undertake to bring individual actions based upon their own distinguishing facts, if any.

**AFFIRMED in part and REMANDED in part.**

BERZON, Circuit Judge, concurring.

In my view, Judge Kleinfeld's dissent in *Schuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004 (9th Cir.2002), has it exactly right. Yield spread premiums and similar devices violate the anti-kickback provisions of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, because they are payments from the lender to the broker and base the amount of the payment solely on the value of the loan to the lender. "The measure [of the payment] has nothing to do with how much work the broker does." 292 F.3d at 1015(Kleinfeld, J., dissenting).

There is one reason in addition to those discussed by Judge Kleinfeld for rejecting HUD's latest view of the meaning of the anti-kickback provision, as applied to FHA loans. As the majority opinion explains, there is a 1% limit on direct origination fees for such loans. It therefore makes no sense to explain the YSP and SRP as spreading out fees that the borrower would otherwise pay up front, because it is not legal to charge those fees up front to the borrower. While I agree with Part III of the opinion that the FHA's 1% cap does not forbid indirect payments by the lender, it is precisely *because* they are indirect payments by the lender that they cannot constitute relief to the borrower from higher out-of-pocket costs.

I nonetheless concur in the opinion in its entirety, because *Schuetz* and *Lane v. Residential Funding Corp.*, 323 F.3d 739 (9th Cir.2003), reaffirming *Schuetz,* are binding precedent, and I agree that "the facts of *Schuetz* are virtually indistinguishable from the facts in the present case."