John Robert **CULPEPPER,**
et al., Plaintiffs,

v.

**INLAND MORTGAGE CORPORATION,**
Defendant.

**Beatrice Hiers, et al., Plaintiffs,**

v.

**Irwin Mortgage Corp., f/k/a Inland Mortgage Corp., Defendant.**

**Civ. Nos. CV–96–917–VEH,
CV–98–2187–VEH.**

United States District Court,
N.D. Alabama,
Southern Division.

Feb. 7, 2006.

David R. Donaldson, David J. Guin, Tammy McClendon Stokes, Donaldson & Guin LLC, Birmingham, AL, Kieron F. Quinn, Richard S. Gordon, Quinn Gordon & Wolf, Baltimore, MD, for Plaintiffs.

Mark G. Schroeder, Robert J. Pratte, Briggs & Morgan PA, Minneapolis, MN, Sarah Y. Larson, Maynard Cooper & Gale PC, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S RENEWED MOTION TO DECERTIFY CLASS

HOPKINS, District Judge.

Presently pending before this Court is the Defendant's Renewed Motion to Decertify Class (doc. 191). For the reasons stated, the Motion is **GRANTED.**

## NATURE OF THE ACTION

This action is brought under Section 8 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, 2607. The Plaintiffs, who received FHA mortgage loans from Defendant Irwin Mortgage Corporation, allege that Defendant's payments of yield spread premiums ("YSPs") to mortgage brokers are illegal kickbacks or referral fees prohibited under Section 8. Defendant claims that its YSPs are not illegal kickbacks or referral fees, but legitimate compensation for goods, facilities, and services provided by mortgage brokers. "A YSP is a payment made by a lender to a broker in exchange for that broker's delivering a mortgage that is above the 'par rate' being offered by the lender. Briefly stated, the payment is typically a certain percentage of the total amount of the loan; the exact percentage is determined by the extent to which the actual interest rate exceeds the par rate. These YSP's potentially violate Section 8(a) of RESPA, which prohibits the payment of kickback fees and referrals in association with mortgage lending." *Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257, 1259 (11th Cir.2002)

## PROCEDURAL HISTORY

John and Patricia Culpepper ("Culpepper", "Plaintiffs"), on April 11, 1996, filed this action for themselves and on behalf of others alleged to be similarly situated. On January 31, 1997, the court (Hancock, J.) granted Defendant's motion for summary judgment. *Culpepper v. Inland Mortgage Corp.*, 953 F.Supp. 367 (N.D.Ala.1997). On January 9, 1998, the Eleventh Circuit reversed and remanded for consideration of the Plaintiffs' class certification motion. *Culpepper v. Inland Mortgage Corp.*, 132 F.3d 692 (11th Cir.1998) (*Culpepper I*). On June 22, 1998, the Eleventh Circuit denied Defendant's petition for rehearing and rehearing *en banc*. *Culpepper v. Inland Mortgage Corp.*, 144 F.3d 717 (11th Cir.1998) (*Culpepper II*).

On July 15, 1998, the case was reassigned to Judge Pointer. On August 28, 1998, Beatrice Hiers filed a RESPA claim against Defendant Inland Mortgage Corporation (which had changed its name to Irwin Mortgage

Corp.). On October 17, 1998, the case was reassigned to Judge Buttram and, on December 17, 1998, the *Culpepper* and *Hiers* cases were consolidated. On June 22, 1999, Judge Buttram granted Plaintiffs' motion for class certification. On September 29, 1999, the Eleventh Circuit granted Defendant's petition pursuant to Fed.R.Civ.P. 23(f) to review the class certification decision.

On June 15, 2001, the Eleventh Circuit issued a decision affirming the class certification decision. *Culpepper v. Inland Mortgage Corp.*, 253 F.3d 1324 (11th Cir.2001) (*Culpepper III*). On July 23, 2001, Plaintiffs filed a motion for partial summary judgment. On August 15, 2001, the Eleventh Circuit denied Defendant's motion for rehearing and rehearing *en banc*. The mandate was issued on August 20, 2001, affirming the certification of this class.

On October 18, 2001, the Department of Urban Housing and Development ("HUD") issued a policy statement entitled "Clarification of Statement of Policy 1999–1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b)" ("the 2001 SOP"). 66 Fed.Reg. 53052. On October 31, 2001, the Court ordered the parties to submit briefs regarding the import of the 2001 SOP. On November 1, 2001, the parties submitted briefs as ordered, and the consolidated cases were reassigned to Judge Bowdre.

On January 22, 2002, the Supreme Court denied Defendant's motion to grant its petition for *writ of certiorari*, to vacate *Culpepper III*, and remand the case to the Eleventh Circuit to reconsider in light of the policy statement. *Irwin Mortg. Corp. v. Culpepper*, 534 U.S. 1118, 122 S.Ct. 930, 151 L.Ed.2d 893 (2002).

On March 8, 2002, the court stayed the case pending the Eleventh Circuit's resolution of three other RESPA appeals that had been argued simultaneously with *Culpepper III*. On September 18, 2002, the Eleventh Circuit issued its decision in *Heimmermann v. First Union Mortgage Corp.*, 305 F.3d 1257 (11th Cir.2002), *cert. denied*, 539 U.S. 970, 123 S.Ct. 2641, 156 L.Ed.2d 675 (2003). On January 24, 2003, the Eleventh Circuit issued *per curiam* decisions in the other two

RESPA appeals—*McBride v. ReliaStar*, No. 99–12110, and *Richardson v. BankAmerica Corp.*, No. 99–11554.

On February 3, 2003, in an effort to clear the docket, Judge Bowdre denied Plaintiffs' motion for summary judgment with leave to refile after the stay was lifted. On February 10, 2003, Judge Bowdre lifted the stay. On March 14, 2003, the Plaintiffs filed their renewed motion for summary judgment, and Defendant filed its renewed motion to decertify the class. The Plaintiffs also moved, on April 24, 2003, to certify a subclass.

On September 23, 2003, the Plaintiffs moved to mediate this case. This case was reassigned to Judge Proctor. This case was mediated before Magistrate Judge Davis on June 14, 2004. The mediation was unsuccessful.

On June 28, 2004, this case was reassigned to me.

On March 17, 2005, I entered a scheduling order for new motions and briefs in light of the changes in law since 2003, when the pending motions were filed. On April 15, 2005, Defendant filed a renewed motion for summary judgment and Plaintiffs filed a renewed motion for summary judgment. On April 18, 2005, the Defendant filed a renewed motion to decertify class.

### QUESTION PRESENTED—
### LAW OF THE CASE

*Heimmermann* clearly states that, due to an intervening change in the law (the 2001 HUD SOP), *Culpepper III* was wrongly decided. *Culpepper III* found that common issues of law and fact predominated as to liability because "a yield spread premium can be presumed to be a referral fee based solely upon the fact that the lender pays the broker a yield spread premium that is based upon a rate sheet, or because the lender does not have specific knowledge of what services the broker has performed", and thus class certification proper. To the contrary, *Heimmermann* and its progeny hold that no such presumption is proper and thus individual issues of fact as to liability predominate in RESPA Section 8 cases, with the result that class certification is improper.

We also conclude that the rule announced in the 2001 SOP can, in effect, overrule the holding of *Culpepper III* . . .

We conclude that the substance of the 2001 SOP compels a different result in this case than the result in *Culpepper III*. The 2001 SOP explicitly rejects the foundation of *Culpepper III:* "neither Section 8(a) of RESPA nor the 1999[SOP] supports the conclusion that a yield spread premium can be presumed to be a referral fee based solely upon the fact that the lender pays the broker a yield spread premium that is based upon a rate sheet, or because the lender does not have specific knowledge of what services the broker has performed." 2001 SOP, 66 *Fed.Reg.* at 53,055.

305 F.3d 1257, 1263.

In [*Culpepper III* ], the district court concluded that the requirements [of Rule 23] were met. The district court determined that common questions of fact were dominant because the class representative alleged these things: 1) for each class member's loan, the amount of the YSP was based solely upon the amount by which the loan rate exceeded the par rate; and 2) for each class member's loan, the YSP was not tied directly to specific additional services provided by the broker.

The 2001 SOP, however, makes clear that facts such as those alleged are not sufficient to establish a violation of RESPA. Instead, it is necessary to determine whether compensable services were provided by the broker and whether the total amount of broker compensation was reasonable *in the light of the circumstances of each loan.*

*Id.,* 305 F.3d 1257, 1264 (emphasis supplied).

Therefore, the question before this court is whether *Culpepper III* is nonetheless law of the case [1].

#### DISCUSSION

There is authority for the proposition that a trial court may depart from the mandate to obey new law without first asking permission from the appellate court. 18B Charles Alan Wright, Arthur R. Miller, and Edward Cooper, *Federal Practice and Procedure,* § 4478.3 (2d ed.2002). *See, Leggett v. Badger,* 798 F.2d 1387 (11th Cir.1986) ("The mandate rule is one branch of law-of-the-case doctrine, and district courts are permitted to deviate from the mandate for the same reasons as would justify departure from the law of the case on a later appeal.").

 Generally, an appellate court decision on an issue must be followed in all subsequent trial court proceedings in the same case. *Dorsey v. Continental Casualty Co.,* 730 F.2d 675, 678 (11th Cir.1984). This rule, usually referred to as the "law of the case" doctrine, has three exceptions that allow the district court to act contrary to the appellate decision: (1) when new and substantially different evidence is presented subsequent to the appeal; (2) when controlling authority has been rendered, contrary to the law of the appellate decision; and (3) when the prior decision was clearly erroneous and would work a manifest injustice if implemented. *Stanley v. United States,* 786 F.2d 1490, 1498 (11th Cir.1986), *rev'd on other grounds,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987).

I believe these exceptions are to be read and applied narrowly. "A district court should follow the law of the case as decided by the appellate court unless the court is certain that one of the three specifically and unquestionably applies." *Id.,* n. 2.

Neither the first nor the second of the listed justifications applies. There is no argument that new evidence exists. Additionally, it is the established law that the Eleventh Circuit follows the "first panel" rule and that only the court, sitting *en banc,* can overrule a prior ruling of a panel of the court. "A prior panel decision of this Court is binding on subsequent panels and can be overturned only by the Court sitting en banc. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981). When faced with an intra-circuit split we must apply the 'earliest case' rule, meaning 'when circuit authority is

---

1. As stated previously, and as the parties acknowledge, *Culpepper III* expressly mandated that class certification was proper.

in conflict, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel.' *Walker v. Mortham,* 158 F.3d 1177, 1188 (11th Cir. 1998)." *Morrison v. Amway Corp.* 323 F.3d 920, 929 (11th Cir.2003).

### THE THIRD EXCEPTION AND WHETHER CULPEPPER IS CONTROLLED BY HEIMMERMANN

■ My first impression, and second and third, was that the effect of *Heimmermann* on this action was unambiguous. In light of the express language of *Heimmermann* that *Culpepper III* was wrongly decided and that the 2001 SOP overrules *Culpepper III,* I would be quite comfortable holding that, since the *Heimmermann* Court said *Culpepper III* was wrongly decided (that is, clearly erroneous), and further said that individual issues of fact predominate as to liability, the third (mandate) exception is present. The reasoning would be that to allow these cases to proceed as a class action when the purported class fails to meet the typicality requirement of Rule 23(a) and the predominance requirement of Rule 23(b)(3) [2],[3] would result in manifest injustice.

Before doing that, however, I had to review the two classes (*Culpepper's* and *Heimmermann's*) to see if there was something about this class that might change the analysis. The question became, is there a significant difference between the class certified in *Heimmermann, supra,* and the class here?

The *Heimmermann* opinion, 305 F.3d 1257, 1259 (11th Cir.2002), does not describe the class with particularity. The District Court opinion, *Heimmermann v. First Un-ion Mortg. Corp.,* 188 F.R.D. 403 (N.D.Ala. 1999) (Johnson, J.) describes the class thus:

> All persons residing in the United States and its territories who, during the period one year prior to the date of the filing of this Complaint forward, obtained a federally-related mortgage loan from the defendant in which the borrower(s) HUD–1 reflects: (1) that the mortgage broker was paid a fee for its services from the "Borrowers' Funds" and/or the "Seller's Funds" at closing and (2) that First Union Mortgage Corporation paid the mortgage broker a fee outside of closing ("POC"). (doc. 19). The basis for plaintiffs' complaint against the defendant is that the defendant paid a "yield spread premium" to the mortgage broker Tennessee Valley Funding in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, 2607.

The *Culpepper* class consists of:

> [a]ll persons who, from April 11, 1995, until this class is certified, [June 22, 1999], inclusive, obtained an FHA mortgage loan that was funded by Irwin Mortgage Corporation wherein the broker was paid a loan origination fee of 1% or more and wherein Irwin paid a "yield spread premium" to a mortgage broker.

*Culpepper III,* 253 F.3d 1324, 1326.

The difference between these two class descriptions, that is, that the loans here were "FHA mortgage loans" (with a maximum permitted origination fee of 1%) and that the mortgage brokers were paid a loan origination fee of 1% or more and that Defendant also paid the mortgage broker a yield spread premium, is the basis for the Plaintiffs' contention that *Heimmermann* does not apply to the Culpepper class because, under FHA

---

**2.**

> (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if ... (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class....
> (b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> (3) the court finds that the questions of law or fact common to the members of the class

> predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: ... (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. of Civ. Proc. Rule 23.

**3.** And when no other set of identically situated plaintiffs would be allowed to proceed as a class.

policy, any loan origination fee in excess of 1% was *per se* illegal and therefore the amount paid to the mortgage brokers was also *per se* not "reasonable." Indeed, the Plaintiffs argue that Defendant has admitted, in its answers to interrogatories and its statements before the Eleventh Circuit, that the YSP was a referral fee.

First, as to the admissions in interrogatories and statements, the Defendant admitted that, as to the Culpeppers, the YSP was paid based on the yield spread and not on any service rendered. Second, the Defendant admitted that, as to all its mortgage loans up to the date of the answers to interrogatories, it used standard form contracts that set out the basis for and rates of broker compensation. However, this is not an admission that, as to *all* brokered mortgage loans during that time period, the Defendant's payments were not "for" services. Moreover, this is not an admission that the YSPs paid for loans *other than* the Culpepper's loan were referral fees.

The Plaintiffs cite *Culpepper I* as establishing that these YSPs were referral fees. (*See,* Plaintiffs' Opposition Brief, doc. 156, p. 12, n.11.) However, what the Eleventh Circuit actually said in *Culpepper I* was that "[t]hese undisputed facts compel the conclusion that Inland's payment of the yield spread premium to Premiere was a referral fee, and thus a violation of RESPA, *unless the payment falls within one of the exceptions listed in § 2607(c).*" *Culpepper I,* 132 F.3d at 696 (emphasis supplied). *Analyzing the facts of the Culpepper's case,* the Eleventh Circuit went on to hold that "the only 'service' for which the yield spread premium was compensation was Premiere's 'service' of referring an above par loan [to the Culpeppers] to Inland. However, referring loan business, even valuable business, is not a service for which RESPA permits payment. The yield spread premium payment thus violated RESPA." *Culpepper I,* 132 F.3d at 697. The Eleventh Circuit expressly recognized that "[m]ortgage transactions are structured in a variety of ways, and the holding here is highly dependent upon the facts of this financial transaction. We simply note that the particular facts here do not support the conclusion that the yield spread

premium in this case was paid as compensation for the services Premiere provided to the Culpeppers." *Id.* The Eleventh Circuit did not hold that the fees paid in the Culpepper loan were referral fees; it held that the Defendant had not shown for summary judgment purposes that the fees paid in the Culpepper's transaction met one of Section 2607(c)'s exceptions. "The only issue decided by the court [in *Culpepper I* ] was whether as a matter of law Inland had proven in the instant record that this yield spread premium for this table-funded loan was a payment for goods or services and therefore not a prohibited referral fee." *Culpepper v. Inland Mortg. Corp.* 144 F.3d 717, 718 (11th Cir. 1998) (*Culpepper II* ). The court left open the possibility that the Defendant could prove that the Culpepper YSP was not a prohibited referral fee, while at the same time noting the practical problems facing the Defendant in trying to do so. *Id.* at 719 ("[W]e clarify that Inland's inability to obtain judgment as a matter of law on the current record does not prevent Inland, on remand, from attempting to prove its case at trial. Nonetheless, we note that certain facts about the nature of this financial transaction seem to be undisputed which, at a minimum, presents [sic] a hurdle for Inland at trial.")

12 U.S.C. § 2607(c)(2) provides: "Nothing in this section shall be construed as prohibiting ... the payment to any person of ... compensation or other payment for goods or facilities actually furnished or for services actually performed." The 2001 SOP interprets when a YSP is a permitted payment.

Plaintiffs concede that the first prong of the 2001 SOP was met (that is, that compensable services were provided by the broker) (*see* Plaintiffs' Opposition brief, doc. 156, p.21.). However, Plaintiffs argue that because they paid the maximum origination fee permitted by law (1%), their YSPs "could only have been used to pad the broker's fees and therefore cannot be 'reasonable' on a classwide basis." (Plaintiffs' Opposition brief, doc. 156, p. 21.) It is just this type of presumption that *Heimmermann* and the 2001 SOP forbids ("it is necessary to determine ...whether the total amount of broker compensation was reasonable *in the light of the circumstances of each loan.*") *Heimmermann,* 305 F.3d 1257, 1264 (emphasis sup-

plied).[4] *See also, Bjustrom v. Trust One Mortg.,* 178 F.Supp.2d 1183, 1194 (W.D.Wash., 2001) ("Clearly trying to eliminate the possibility of class actions in RESPA cases, HUD states that 'it is necessary to look at each transaction individually, including examining all of the goods or facilities provided or services performed by the broker in the transaction.'" (citing RESPA Statement of Policy 2001, at 11–12.))

Further, the Plaintiffs' 1% fee cap/*per se* illegality argument has been expressly and persuasively rejected by courts that have considered it. *See e.g. Id.,* 178 F.Supp.2d at 1187–1193 ("The 1% fee cap plaintiffs allege is not a statutory provision, but a HUD regulation. Analysis shows that HUD could promulgate such a rule under the authority Congress has granted to administer the mortgage insurance program. However, an examination of the regulation does not show HUD's intent to limit permissible fees to a 1% origination fee. * * * The language of section 203.27 is best read to limit up-front charges directly to the borrower to a 1% 'origination fee,' along with the other specific allowed charges of the section. In order to avoid reading an effective elimination of compensation from interest payments to mortgage brokers, this Court concludes that collecting from the borrower means collecting *directly* from the borrower, and does not apply to *indirect* payments of yield spread and service release premiums from the lender to the mortgage broker. * * * Nowhere in this 1999 policy statement, nor the most recent 2001 policy statement, does HUD address a 1% cap. Rather, in stating that premiums are not 'illegal per se,' HUD directs an inquiry to see if the premiums violate RESPA. 64 Fed.Reg. at 10082–83. This Court concludes that these statements indicate that HUD does not believe that the premiums should be analyzed under section 203.27. If the case were otherwise, since apparently almost all borrowers ... are charged the 1% origination fee and 'pay' premiums, HUD would have to consider these premiums to be *per se* illegal. Given

the extensive litigation and clarification around yield spread premiums, the Court considers that HUD has elaborated a policy that yield spread premiums and service release premiums do not fall under the 1% origination fee cap.")[5]

*CONCLUSION*

■ Under the court's broad authority to alter and amend class certification orders until final judgment, in light of *Heimmermann's* clear finding that the holding in *Culpepper III* was erroneous and *Heimmermann's* further holding that individual issues of fact predominate in RESPA Section 8 cases such that class certification is improper, and to avoid manifest injustice, Defendant's Renewed Motion to Decertify Class is **GRANTED**.

Under the authority of *Heimmermann,* Plaintiffs' motion to certify a subclass is **DENIED** on the basis that individual issues of fact predominate.

**4.** Which, applied here, means that while the fees may have been illegal as to the Culpeppers, *Culpepper I* does not require, nor mandate, that the same result obtains with the proposed class. There was no class question before the 11th Circuit in *Culpepper I.*

**5.** *Bjustrom* sets forth its reasoning in substantial detail. Because I completely agree with that analysis, I will not repeat the full discussion here.