[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 23, 2003
THOMAS K. KAHN
CLERK

No. 00-11837

D. C. Docket No. 98-01032 CV-0DE-1

PAMELA C. HIRSCH, individually, and on behalf
of all others similarly situated, DAVID L. HIRSCH,

Plaintiffs-Appellants,

versus

BANKAMERICA CORPORATION, a Delaware
corporation, BANK OF AMERICA FSB, INC., a Hawaii
corporation, BANKAMERICA MORTGAGE, a division
of BankAmerica FSB, a Hawaii corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 23, 2003)**

Before EDMONDSON, Chief Judge, COX and GIBSON[*], Circuit Judges.

PER CURIAM:

---

[*]Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by
designation.

In this RESPA case, Plaintiffs Pamela and David Hirsch appeal the district court's grant of summary judgment to defendants BankAmerica Corp. and Bank of America FSB (collectively "Bank of America"). We affirm.

This case is one of several dealing with the legality of the payment of Yield Spread Premiums (YSPs) by mortgage lenders to mortgage brokers. In Heimmermann v. First Union Mort. Corp., 305 F.3d 1257 (11th Cir. 2002), we said that the Department of Housing and Urban Development's (HUD's) 2001 Statement of Policy (2001 SOP)[1] applies retroactively and governs the disposition of these cases.


BACKGROUND


Pamela and David Hirsch sought a mortgage loan to purchase a new home. They hired Rodgers Mortgage Company (Rodgers) to act as their mortgage broker. The Hirsches told Rodgers that they wanted a low interest rate and the lowest possible closing costs. Rodgers performed all the services necessary to allow the

---

[1] Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed. Reg. 53,052 (Oct. 18, 2001).

Hirsches to obtain a $150,000.00 home loan; and Rodgers selected Bank of America as the mortgage lender.[2]

Rodgers received a total of $2,125.00 for their services. The Hirsches paid Rodgers a $1,000.00 loan origination fee[3] and a $750.00 loan discount fee. In addition, Bank of America paid Rodgers a $375.00 YSP.[4] Rodgers' total compensation was approximately 1.4% of the $150,000.00 loan. Rodgers typically received compensation ranging from 1.5% to 2% of mortgage loans. The total compensation was in the lower range of what other mortgage brokers in that market charged for similar transactions.

The Hirsches' loan closed on 20 June 1996. Later, they filed this case -- initially as a class action -- claiming the payment of the YSP violated section 8 of

---

[2] It is undisputed that Rodgers provided a variety of services including these services:
    (a) visiting the Hirsches on several occasions to obtain information;
    (b) completing the loan application;
    (c) preparing various required disclosure documents;
    (d) obtaining and verifying the Hirsches' financial records;
    (e) obtaining a credit report;
    (f) arranging an inspection of the property;
    (g) arranging for the appraisal of the property;
    (h) re-scheduling the closing to accommodate the Hirsches; and
    (i) attending the closing of the loan.

[3] The Hirsches believed the $1000.00 covered all of Rodgers' services. The Hirsches claim they are unaware of services that Rodgers specifically performed to earn the YSP.

[4] The YSP was derived from published rate sheets which tied the amount of the YSP to the amount and the interest rate of the loan.

the Real Estate Settlement Procedures Act (RESPA).[5] The district court denied

class certification on 20 April 1999. In <u>Richardson v. BankAmerica Corp.</u>, No.

99-11554, slip op. (11th Cir. Jan. 24, 2003), we affirmed the district court's denial

of class certification. While the class certification appeal was pending, Bank of

America moved for summary judgment. The district court granted Bank of

America's motion because the Hirsches "failed to demonstrate a genuine issue of

fact as to Rodgers' actual provision of valuable goods and services or the

reasonableness of their compensation for those services."[6]

## DISCUSSION

---

[5] Section 8 of RESPA prohibits the payment of referral fees, it provides in pertinent part:

> No person shall give and no person shall accept any fee, kickback, or
> thing of value pursuant to any agreement or understanding, oral or
> otherwise, that business incident to or a part of a real estate settlement
> service involving a federally related mortgage loan shall be referred
> to any person.

12 U.S.C. § 2607.

This case was filed in the Middle District of Georgia. Pursuant to a consent order, the case was transferred to the Northern District of Georgia and consolidated with <u>Richardson v. BankAmerica Corp.</u>, Civil Action No. 1:98-CV-1031-ODE.

[6] Bank of America also moved for summary judgment on the Richardson's claims. Finding material facts at issue, the district court denied summary judgment on those claims. This portion of the district court's order is not before us, and we say nothing about it.

In its 2001 SOP, HUD emphasized that a YSP -- calculated based on the difference between the interest rate of the loan and the market rate -- can be "a useful means to pay some or all of a borrower's settlement costs" as well as "a legitimate tool to assist the borrower." 2001 SOP, 66 Fed. Reg. 53052, 53054 (Oct. 18, 2001). HUD stressed that "neither Section 8(a) of RESPA nor the 1999 [SOP] supports the conclusion that a yield spread premium can be presumed to be a referral fee based solely upon the fact that the lender pays the broker a yield spread premium that is based upon a rate sheet . . . ." Id. at 53055. HUD cautioned that YSPs must be evaluated on a case by case basis in the context of "the specific factual circumstances applicable to each transaction." Id. at 53054.

After stating YSPs were not per se legal or illegal, HUD clarified a two part test -- which we adopted in Heimmermann -- to determine the legality of a payment from a mortgage lender to a mortgage broker. Id. at 53055; see also Heimmermann, 305 F.3d at 1263-64. The test is satisfied here.

Under HUD's test, we first must "determine whether the broker has provided goods or services of the kind typically associated with a mortgage transaction." Heimmermann, 305 F.3d at 1263. HUD, in its 1999 Statement of

5

Policy (1999 SOP)[7], listed some services that satisfy this factor. See 1999 SOP, 64 Fed. Reg. 10080, 10085 (Mar. 1, 1999). Rodgers provided many of these services: taking information from the borrower; filling out the application; analyzing the prospective borrower's income and debt; collecting financial information; initiating/ordering appraisals and inspections; providing disclosures; maintaining regular contact with the borrower; and attending the closing.[8]

Because Rodgers did provide actual services, we proceed to the second step of HUD's test, "determining whether the total compensation paid to the broker is

---

[7] Real Estate Settlement Procedures Act Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10,080 (March 1, 1999).

[8] The Hirsches argue Bank of America failed to identify services performed by Rodgers to earn the YSP in particular. But HUD instructs us to look at all the services performed and to evaluate them in the light of all the compensation (not the YSP in isolation) the mortgage broker received from any source.

> HUD does not believe that it is necessary or even feasible to identify or allocate which facilities, goods or services are performed or provided for the lender, for the consumer, or as a function of State or Federal law. All services, goods and facilities inure to the benefit of both the borrower and the lender in the sense that they make the loan transaction possible . . . .

1999 SOP, 64 Fed. Reg. at 10086. The Hirsches' subjective belief that the $1000 origination fee was supposed to cover these services does not automatically transform the YSP into a referral fee. Rodgers possibly should have done a better job of explaining its compensation to the Hirsches, but this fact does not make the YSP illegal. A YSP will fail the first element of HUD's test if it is "a payment to a broker who provides 'no, nominal, or duplicative work' . . . ." Heimmermann, 305 F.3d at 1263 n.8.

The Hirsches argument that the YSP was not itemized as a credit to the borrower in the 200 series of the HUD-1 form and therefore did not offset their costs is also unpersuasive. HUD recommends -- but does not require -- listing YSPs in the 200 series. 66 Fed. Reg. at 53056. The YSP was disclosed on the HUD-1 form exactly as HUD requires.

reasonably related to the total value of the goods or services actually provided." Heimmermann, 305 F.3d at 1264. "Total compensation includes fees paid by a borrower and any yield spread premium paid by a lender, not simply the yield spread premium alone." 2001 SOP, 66 Fed. Reg. at 53055. The Hirsches have never argued that Rodgers's total compensation was unreasonable in the light of the services Rodgers performed. Their argument, in a nutshell, was that the YSP, in particular, was not actually paid for -- or tied to -- specific services; so, they say the YSP was improper. This legal position was rejected by HUD's 2001 SOP which we adopted in Heimmermann.

We accept the district court's unchallenged determination of reasonableness. Because both elements of HUD's test were met, we AFFIRM the district court's grant of summary judgment.[9]

AFFIRMED.

---

[9] The district court also granted summary judgment because of RESPA's one-year statute of limitations. Because we affirm the grant of summary judgment on this ground, we do not decide whether the claim was timely.