[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 2, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11105

_____

D. C. Docket Nos. 96-00917-CV-VEH-S & 96-02187-CV-VEH

96-cv-917

JOHN ROBERT CULPEPPER,
PATRICIA STARNES CULPEPPER, on behalf
of themselves and all others similarly situated,

Plaintiffs-Appellants,

versus

IRWIN MORTGAGE CORPORATION,
f.k.a. Inland Mortgage Corporation,

Defendant-Appellee.

-------------------------

98-cv-2187

BEATRICE HIERS, individually and as
a representative of a class of similarly
situated persons,

Plaintiff-Appellant,

versus

IRWIN MORTGAGE CORPORATION,
f.k.a. Inland Mortgage Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 2, 2007)

Before BIRCH and BLACK, Circuit Judges, and PRESNELL,[*] District Judge.

BIRCH, Circuit Judge:

The appellants, John and Patricia Culpepper and Beatrice Hiers, brought the

present class action against appellee Irwin Mortgage Corporation ("Irwin"), a

mortgage lender, pursuant to the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 2601 *et. seq*. The appellants alleged that Irwin's payment

of yield spread premiums to mortgage brokers --- in exchange for delivering

interest rates above the "par rate" --- violated section 8 of RESPA, 12 U.S.C. §

2607(a). After a lengthy procedural history, which is detailed herein, the appellees

_____

[*] Honorable Gregory A. Presnell, U.S. District Judge for the Middle District of Florida,
sitting by designation.

2

ultimately filed motions for summary judgment and to decertify the class, both of which the district court granted.

On appeal, the appellants argue that the district court erred in granting summary judgment in favor of Irwin for two reasons: first, because the "law-of-the-case" doctrine obligates us to adhere to our prior rulings in this case, despite an intervening --- and conflicting --- statement of policy by the Department of Housing and Urban Development ("HUD"), the administrative agency charged with enforcing RESPA; and, second, because, even applying HUD's test for liability, Irwin's yield spread premium payments were illegal under RESPA. The appellants further argue that the district court erred in decertifying the class.

Upon review, we conclude that two exceptions to the law-of-the-case doctrine apply and that the district court acted properly in applying HUD's test for liability to the facts of appellants' case and in concluding that Irwin was entitled to summary judgment. We also conclude that the district court did not abuse its discretion in decertifying the class, due to its determination that individual issues of fact predominate in this type of action. Accordingly, we AFFIRM.

## I. BACKGROUND

This is the fourth time we have had cause to review the appellants' RESPA action against Irwin. In Culpepper v. Inland Mortgage Corporation, 132 F.3d 692

(11th Cir. 1998) ("Culpepper I"), we reversed a grant of summary judgment in favor of Irwin, vacated the district court's denial of class certification, and remanded for further proceedings. In Culpepper v. Inland Mortgage Corporation, 144 F.3d 717 (11th Cir. 1998) ("Culpepper II"), we denied Irwin's petition for a rehearing of Culpepper I, and clarified our decision in that case. In Culpepper v. Irwin Mortgage Corporation, 253 F.3d 1324 (11th Cir. 2001) ("Culpepper III") we clarified the standard for liability under RESPA; we also affirmed the district court's class certification. The procedural backdrop leading to the present appeal is, as our sister circuit has put it, "cumbersome but important." Schuetz v. Banc One Mortgage Corp., 292 F.3d 1004, 1008 (9th Cir. 2002).

Our review of this backdrop is as follows. First, we briefly discuss the facts and allegations of the appellants' action against Irwin. Second, we review our holdings in Culpepper I and Culpepper II, as well as the 1999 Statement of Policy issued by HUD in the wake of those decisions. Third, we discuss our opinion in Culpepper III and the 2001 Statement of Policy that HUD issued in direct response to–and in explicit criticism of–Culpepper III. We then discuss the effect of the HUD 2001 Statement of Policy on our RESPA case law. Finally, we discuss the district court proceedings that led to the present appeal.

A.  The Borrowers' Action Against Irwin

In 1996, the appellants John and Patricia Culpepper and Beatrice Hiers (hereinafter, collectively, "the Borrowers") brought the instant action,[1] on behalf of themselves and all others similarly situated, against Irwin,[2] a mortgage lender, alleging that Irwin had acted illegally in paying yield spread premiums to their mortgage brokers. A yield spread premium ("YSP") is "a payment made by a [mortgage] lender to a [mortgage] broker in exchange for that broker's delivering a mortgage that is above the 'par rate' being offered by the lender." Heimmermann v. First Union Mortgage Corp., 305 F.3d 1257, 1259 (11th Cir. 2002). The "'par rate' refers to the rate at which the lender will fund 100% of a loan with no premiums or discounts to the broker." Schuetz, 292 F.3d at 1007. When a mortgage broker brought Irwin a loan at below the par rate, the broker was required to pay discount points for the loan. See Culpepper I, 132 F.3d at 694. Conversely, when a mortgage broker brought Irwin a loan at a rate above the par rate, Irwin agreed to pay a YSP to the mortgage broker. Id. Generally speaking, the YSP was calculated as a percentage of the total amount of the loan; the exact

---

[1] This action was originally brought by John and Patricia Culpepper. In 1998, Beatrice Hiers' RESPA action was consolidated with the Culpeppers' case, thereby giving rise to the action that is pending before us.

[2] The Culpeppers' original lawsuit was actually brought against Inland Mortgage Corporation ("Inland"), the predecessor lender from whom the Culpeppers obtained their home mortgage. Inland subsequently changed its name to Irwin. For ease of reference, we refer to the appellee throughout this opinion as "Irwin."

5

amount was determined by "the extent to which the actual interest rate exceed[ed] the par rate." Heimmermann, 305 F.3d at 1259.

The particular facts these consolidated cases are not in dispute. Both of the Borrowers obtained their federally insured home mortgage loans through third party mortgage brokers, and Irwin, as the lender, was the source of the funds in each transaction. The Culpeppers obtained their loan with Irwin through Premiere Mortgage Company ("Premiere"), a mortgage broker. The interest rate that they agreed to in connection with their mortgage was 7.5%, despite the fact that the par rate–that is, the rate at which Irwin was willing to make the same loan–was actually 7.25%. Because the loan Premier assigned to Irwin was above par, Irwin paid Premier a YSP. At the closing of the transaction, the Culpeppers directly paid Premiere a loan origination fee of $760.50; in addition to this amount, Irwin paid to Premiere a YSP of $1,263.21, approximately 1.675% of the loan amount.

Appellant Hiers obtained her loan with Irwin through Homebuyers Mortgage Incorporated ("HMI"), another third party mortgage broker. Hiers agreed to an interest rate of 7% in connection with her loan, despite the fact that the par rate for an adjustable rate loan was 5.5%. At the closing, Hiers paid HMI an origination fee of $1,544 and a loan discount of $14.64. In addition to these fees, Irwin paid HMI a YSP of $4,538.87, approximately 2.875% of the total loan amount.

6

Although the YSPs were disclosed to the Borrowers at their closings and were included in their respective HUD closing forms, they argued that Irwin's payment of YSPs from Irwin to their brokers, for obtaining above par mortgages, violated RESPA.[3]  Specifically, the Borrowers argued that Irwin's payment of YSPs violated section 8 of RESPA, which prohibits the payment of "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."  12 U.S.C. § 2607(a).  The Borrowers argued that the YSPs constituted illegal referral fees under RESPA, in that they were paid for nothing more than a broker's delivery of a loan with a higher interest rate.  In response, Irwin contended that its payment of YSPs to mortgage brokers were not kickbacks or referral fees, but, rather, that the payments fell within the safe harbor of RESPA, 12 U.S.C. § 2607(c), which provides that "[n]othing in this section shall be construed as prohibiting . . . the payment to any person of a bona fide . . . compensation or other

_____

[3] Congress enacted RESPA with the goal of "protect[ing] the American home-buying public from unreasonably and unnecessarily inflated prices in the home purchasing process."  See 64 Fed. Reg. 10081-82 (March 1, 1999); see also 12 U.S.C. § 2601(a).  In addressing real estate settlement procedures, Congress sought to, among other things, "effect certain changes in the settlement process for residential real estate that will result (1) in more effective advance disclosure to home buyers and sellers of settlement costs; (2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services . . . ."  12 U.S.C. § 2601(b); see also 64 Fed. Reg. 10082.

payment for goods or facilities actually furnished or for services actually performed."

Irwin moved for summary judgment, which the district court granted. The subsequent appeal resulted in our first decision in this case, Culpepper I.

B. Culpepper I and II, and HUD's 1999 Statement of Policy

In Culpepper I, we first noted that "[n]o circuit court [had yet] addressed whether a [YSP] violates RESPA." 132 F.3d at 695. In addressing that issue, we held that a lender's payment of a YSP to a broker would be an illegal referral fee under RESPA "if: (1) a payment of a thing of value; (2) [was] made pursuant to an agreement to refer settlement business; and (3) a referral actually occurr[ed]." Id. at 696. We concluded that the YSP in the Culpeppers' case violated RESPA, since it satisfied all three requirements. Specifically, the YSP had been paid to Premiere pursuant to a pre-existing arrangement between Premiere and Irwin, and the later assignment of the Culpeppers' loan, from Premiere to Irwin, had, in fact, occurred. Id.

We also rejected the argument that the YSP was bona fide compensation for a "good" or "service" performed by Premiere, such that it should be exempt from liability under 12 U.S.C. § 2607(c). Id. at 696-97. We found that Irwin had not shown that the YSP was payment for a "good" under RESPA, because no

8

identifiable "good" was ever transferred from Premiere to Irwin; in fact, Irwin was, from the outset, the original source of the funds and thus the sole owner of the loan. Id. at 696. Nor had Irwin established that the YSP was payment for a "service" that Premiere had provided, because: (1) the Culpeppers had already paid a separate loan origination fee directly to Premiere to cover its "services"; (2) Irwin had stated in discovery that it paid Premiere a YSP "for the right to service the [Culpeppers'] loan," R6-149, Exh. 16 at 6, thereby belying the notion that the YSP was intended to compensate Premiere for the loan services it provided to the Culpeppers; and (3) the brokerage "services" that Premiere provided were the same, whether the loan was above par, below par, or at par. Id. at 696-97.

In finding that the Culpeppers' YSP was a referral fee that did not fall under the compensable goods/services safe harbor of § 2607(c), we concluded that the YSP was illegal under § 2607(a). Id. at 697. Our Culpepper I decision refrained from inquiring whether the YSP that Irwin had paid to Premiere was reasonable or a "fair market price," stating that the "reasonableness" inquiry only applied if the first step of the § 2607(c) safe harbor was satisfied–that is, if it was first shown that the YSP covered a compensable "good" or "service." Id. at 697. Accordingly, we reversed the district court's grant of summary judgment and remanded for further proceedings.

9

In Culpepper II, we denied a petition for a rehearing of Culpepper I. See 144 F.3d at 718.  In doing so, however, we saw fit to clarify our holding in Culpepper I. We indicated that Culpepper I had not been intended to conclusively establish liability on the part of Irwin, nor had Culpepper I stated that YSPs from a mortgage lender to a mortgage broker were per se illegal under RESPA.  Id.  Rather, the Culpepper I decision had been limited to the question of whether the district court had erred in granting summary judgment for Irwin on the Culpeppers' RESPA action.  Id.  Because Irwin had failed to establish that the YSP it had paid to Premiere had been compensation for either goods or services that Premiere had provided, we concluded that the district court had acted prematurely in granting Irwin summary judgment as a matter of law.  Id. at 718-19.  We stated that nothing in Culpepper I would prevent Irwin, on remand, from arguing its position at trial. Id.

Subsequent to our decisions in Culpepper I and Culpepper II, HUD issued a 1999 Statement of Policy ("SOP") intended "to clarify its position on lender payments to mortgage brokers."  See 64 Fed. Reg. 10080.  HUD first stated that it was issuing the 1999 SOP because Congress had instructed it to do so, based on the fact that "Congress [had] never intended payments by lenders to mortgage brokers for goods or facilities actually furnished or for services actually performed

to be violations of [RESPA] . . . ." Id. (citation omitted). HUD's SOP indicated that mortgage brokers provided many valuable services to home buyers in processing home mortgage loans, and that it was acceptable for mortgage brokers to receive fees as compensations for those services --- either directly from the borrower or indirectly from the lender --- so long as the compensation bore a "reasonable relationship to the market value of the goods, facilities, or services provided." Id. at 10086. HUD also expressly stated its view that payments by lenders to mortgage brokers, including YSPs, were not illegal per se. Id. at 10084.

Rather, HUD recommended a two-part "reasonableness test" to determine whether a payment to a mortgage broker such as a YSP was permissible under RESPA. The first step of the inquiry under the HUD test was "whether goods or facilities were actually furnished or services were actually performed for the compensation paid." Id. The SOP listed a number compensable "services" that a mortgage broker might provide in a mortgage transaction, such as, among others, taking information from the borrower and filling out the mortgage application; analyzing the prospective borrower's income and debt and pre-qualifying the borrower for a mortgage; educating the borrower about the various loan products available to him or her; and assisting the borrower in the mortgage financing, from commencement of the process to the closing. Id. at 10085.

The second step of the HUD test then asked whether the total compensation paid to the mortgage broker was "reasonably related" to the value of those goods or services that he furnished. Id. at 10086. As to this second step, HUD stated that courts were to examine the "total compensation" paid to the broker --- that is, fees paid by both the lender and the buyer --- as a lump sum in order to assess whether it was "reasonably related" to the services provided. Id.

C. Culpepper III and HUD's 2001 Statement of Policy

In 2001, we again addressed the Borrowers' RESPA action against Irwin. The issue before us in Culpepper III was whether the district court had erred in certifying a class action pursuant to Federal Rule of Civil Procedure 23(c). 253 F.3d at 1325-26. Although Culpepper III involved the narrow question of class certification, we accepted the parties' contention that we could only determine if class certification was appropriate if we first "settle[d] on a rule of liability" under 12 U.S.C § 2607(a) and (c). Id. at 1327. Thus, in Culpepper III we sought to construe the proper test for liability under RESPA, in light of HUD's recent pronouncement on the question via the 1999 SOP.

First, we indicated our view that the 1999 HUD SOP on RESPA was "ambiguous." Id at 1327. We then construed the two-part test that had been set forth in the 1999 SOP. We observed that the first step under that test was an

12

assessment of whether the payments at issue were for services "actually performed for the compensation paid." Id. at 1329-30 (citing 64 Fed. Reg. at 10084). We construed that first step as requiring some level of "exchange" between the broker and the lender. Id. at 1329 (stating that "the inquiry in this step includes not only whether the broker performed services, but also whether the broker performed the services as part of a services-for-money exchange"). That is, we held that it was not enough for a lender to show that services had been performed by the mortgage broker; rather, we stated that the lender would have to show that the services that were performed were directly tied to the YSP payment. Id. at 1329-30; see also Schuetz, 292 F.3d at 1010 (stating that in Culpepper III we held that "the test for § 8 liability is not whether the broker performed *some* services, but whether the YSP is payment *for* those services").

We then stated that, if the compensation to the broker was not shown to be directly tied to the services performed --- that is, if the YSP was not shown to be "payment for those services," Culpepper III, 253 F.3d at 1331 — then the second step of the HUD analysis (whether the total compensation was reasonable) was wholly unnecessary. Rather, if the defendant failed at the outset to establish that the YSP payment was directly tied to the services performed, then the YSP was likely a referral fee, which, we held, was "illegal, period" under RESPA. Id. at

13

1330. After articulating this approach to liability under RESPA, we indicated that class certification in the Borrowers' case was proper, because the YSPs were paid pursuant to standardized, across-the-board agreements between the lender and the mortgage broker, and, therefore, the requirements of Rule 23 had been satisfied. Id. at 1332.

In the wake of our decision in Culpepper III, HUD issued a second SOP in October 2001, entitled, in pertinent part, "Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers." See 66 Fed. Reg. 53052 (Oct. 18, 2001). HUD stated that the new SOP was intended to "eliminate any ambiguity concerning the Department's position with respect to [YSPs]." Id. HUD also indicated that the SOP was being issued in direct response to Culpepper III, indicating that "[t]he need for further clarification of HUD's position, as set forth in the 1999 [SOP], on the treatment of lender payments to mortgage brokers under [12 U.S.C. § 2607(a)] is evident from the recent decision [in Culpepper III]." Id. at 53054. HUD went on to state that it "disagree[d] with the judicial interpretation" of § 2607 that we had set forth in Culpepper III. Id.

HUD's 2001 SOP reiterated the two-step test it had established in the 1999 SOP, indicating that the proper analysis involved an assessment, first, into whether compensable services were actually performed by the broker, and, second, whether

14

the total compensation paid to the broker was reasonable.  Id. at 53053.  The SOP

"restate[d]" HUD's position that YSPs were neither per se legal, nor per se illegal.

Id. at 53054.  Rather, HUD advised that each case involving a YSP payment from a

lender to a broker should be assessed based on "the specific factual circumstances

applicable to each transaction in which a [YSP] is used."  Id.

HUD then clarified its two-step test for YSP payments under RESPA.  As to

step one, HUD stated that it was improper to require (as we had in Culpepper III)

that there be a clear and direct link between the "services" the mortgage broker

provided and the compensation that was paid.  Id.  Rather, HUD observed that a

lender might often be aware that a mortgage broker was performing compensable

services for both the lender and the broker, even if the relationship between the

services provided and the compensation paid was not explicitly set forth in a

contractual agreement.  Id.  HUD recommended that the inquiry instead focus on

whether compensable services–such as those it had listed in its 1999 SOP–had

been provided by the mortgage broker, irrespective of whether the parties had

agreed that the YSP was intended to cover those services.  Id.  In clarifying step

one in this way, the SOP rejected the "exchange" analysis that had been applied by

our court in Culpepper III.  HUD's SOP also made clear that if *any* compensable

"services" were, in fact, provided by a broker, the proper analysis would then to be

15

move to step two, that is, whether the total compensation was reasonably related to those services.

As to that second step, HUD reiterated that the inquiry should focus on whether the "total compensation" that the mortgage broker received was "reasonably related to the total set of goods or facilities actually furnished or services performed." Id. HUD stated that the total compensation was to be viewed as a whole (not just the YSP in isolation), and that an assessment of whether the compensation was "reasonable" involved both an objective component (that is, typical mortgage broker compensation in comparable markets) and a subjective component (that is, in light of the particular services that the broker provided). Id.

D. The Impact of the 2001 Statement of Policy on Our Case Law

Subsequently, in Heimmermann v. First Union Mortgage Corporation, we addressed the impact of the HUD 2001 SOP. Although the Borrowers in the instant case were not parties to Heimmermann, the facts of that case were similar to the Borrowers' action; we characterized Heimmermann as "one of several [cases] dealing with RESPA's effect on the legality of the payment of [YSPs] by mortgage lenders to mortgage brokers." 305 F.3d at 1259. The issue before us in Heimmermann was whether the district court had applied the correct legal standard for RESPA liability in the course of certifying a class in that case.

At the outset, <u>Heimmermann</u> addressed the applicability of the 2001 HUD SOP on our RESPA case law. First, we held that the 2001 SOP was not a "new rule" or regulation, but merely a clarification of existing law, and therefore, "no problem with the retroactive application of the [SOP] exist[ed]." <u>Id.</u> at 1260. Second, we noted that RESPA expressly delegated to HUD the power to issue interpretations and rules --- including statements of policy similar to the 2001 SOP --- that carry the full force of law, and therefore, the 2001 SOP was entitled to <u>Chevron</u>[4] deference by our court. <u>Id.</u> at 1262.[5] We rejected the plaintiff's arguments that the 2001 SOP should not be afforded <u>Chevron</u> deference because (1) it had not been issued pursuant to a formal notice-and-comment process; and (2) it was inconsistent with earlier expressions of HUD's position and the statutory language. <u>Id.</u>

After determining that the 2001 SOP was entitled to <u>Chevron</u> deference, we held that the rule announced in the 2001 SOP had the effect of "overrul[ing] the

[4] <u>See</u> <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council</u>, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782 (1984) (stating that where Congress has delegated authority to an agency to elucidate a provision of a statute, the agency's rules carry the full force of law and are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute).

[5] Other circuits, including the Ninth Circuit and the Second Circuit, have similarly concluded that HUD's 2001 SOP construing RESPA is entitled to <u>Chevron</u> deference. <u>See, e.g.</u>, <u>Schuetz</u>, 292 F.3d at 1012, 1014 (stating that the 2001 SOP is entitled to <u>Chevron</u> deference and that it "provides the appropriate standard of liability for YSPs under RESPA"); <u>see also</u> <u>Kruse v. Wells Fargo Home Mortgage Inc.</u>, 383 F.3d 49, 61 (2d Cir. 2004) (affording <u>Chevron</u> deference to the 2001 SOP in the context of section 8(b) of RESPA).

holding of <u>Culpepper III</u>." <u>Id.</u> at 1263. We stated that the 2001 SOP had "explicitly reject[ed] the foundation of <u>Culpepper III</u>" and that we were bound to apply the revised two-step test as it had been articulated by HUD in the 2001 SOP. <u>Id.</u> We cited our decision in <u>Satellite Broadcasting and Communications Association of America v. Oman</u>, 17 F.3d 344 (11th Cir. 1994), for the proposition that we were bound to defer to an intervening statutory interpretation that was contrary to our earlier precedent, so long as the agency's interpretation was based on a permissible construction of the statute. <u>Id.</u>

Having adopted the 2001 SOP as the law in our circuit on the question of YSP liability under RESPA, we concluded in <u>Heimmermann</u> that the district court had applied the "wrong legal standard" in deciding to certify the class. <u>Id.</u> at 1264. Specifically, we observed that the district court had certified the class based on the fact that "for each class member's loan, *the YSP was not tied directly to specific additional services* provided by the broker." <u>Id.</u> (emphasis added). Because that legal standard was suggestive of <u>Culpepper III</u>'s "exchange" analysis --- an approach that had since been rejected by the 2001 SOP --- we held in <u>Heimmermann</u> that the district court had committed legal error. <u>Id.</u> Moreover, we indicated that the 2001 SOP had made clear that "it [was] necessary to determine whether compensable services were provided by the broker and whether the total

18

amount of broker compensation was reasonable in the light of the circumstances of each loan," a fact that militated against certifying a class of plaintiffs based only on the fact that their mortgage brokers had received YSPs. Id.

Although the Heimmermann court did not proceed to apply the HUD test as articulated in the 2001 SOP, we later had occasion to apply that test in Hirsch v. Bank America Corporation, 328 F.3d 1306 (11th Cir. 2003) (per curiam). Like the Borrowers' case, Hirsch was an action against a mortgage lender for paying a YSP to a mortgage broker. Id. at 1307. In Hirsch the mortgage broker had received $1,750 in fees from the plaintiff/borrower, and had received an additional $375 YSP from the lender for delivering a loan with a favorable interest rate. Id. at 1307-08.

In Hirsch, we reiterated that Heimmermann had adopted the 2001 SOP as the law of this circuit; we then applied the two-step test as articulated in the 2001 SOP. Id. at 1309. First, we found that the mortgage broker had provided "actual services" to the Hirsches, such as recording their information, preparing the mortgage application, analyzing their income and debt, and attending the closing. Id. Having satisfied the first step of the HUD test, we then moved to step two, and concluded that the total compensation paid to the broker–about 1.4% of the loan amount–was reasonable under the circumstances. Id. Accordingly, we held that

19

the defendant/lender was entitled to summary judgment on the Hirsches' RESPA claim, since the Hirsches' had failed to establish that the YSP was illegal under the HUD test construing section 8 of RESPA. Id.

E. The District Court Proceedings After the 2001 Statement of Policy

In the wake of these appeals, and subsequent to the parties' discovery in this case, Irwin filed motions for summary judgment and to decertify the class. As to Irwin's motion for summary judgment, the district court found that Heimmermann had made clear that our circuit had adopted HUD's two-prong test, as articulated in the 2001 SOP. The court then turned to the facts of the Borrowers' transactions in order to assess whether the services provided by their mortgage brokers (Premiere for the Culpeppers, and HMI for Hiers) had complied with HUD's two-step test. As to step one, the district court found that the Borrowers' mortgage brokers had provided compensable services to them, including those services listed in the 1999 SOP, such as collecting financial information; assisting with the mortgage application process; and maintaining contact with the borrower.

Moving to step two --- whether the total compensation the mortgage brokers received was "reasonably related" to the value of the services the mortgage brokers performed, 64 Fed. Reg 10084 --- the district court found that the Borrowers had

20

not presented any evidence to show that the compensation received by their brokers was unreasonable. The court found that the Borrowers' argument that the YSP was paid to their brokers without any concomitant reduction in their out-of-pocket, up-front costs was not sufficient, in and of itself, to establish that the brokers' total compensation was not "reasonably related" to the services the brokers provided. The court further found that the Borrowers had failed to present any evidence that the compensation these brokers received was unreasonable in comparison to similar mortgage loans in similar transactions. Because the Borrowers had not provided "any evidence that establishe[d] the unreasonableness of Premier's or HMI's total compensation in light of market norms," the district court concluded that there was no genuine issue of fact on the issue of the reasonableness of the compensation, and, therefore, Irwin was entitled to summary judgment on the Borrowers' RESPA action. R9-204 at 22.

As to the separate motion to decertify the class, the district court indicated that the Heimmermann decision made clear that YSP payments to brokers should be assessed on a case-by-case basis, and that therefore class certification was not appropriate for these kinds of actions, in which individual fact issues predominate. The court also rejected the Borrowers' argument that the YSP payments were above the 1% FHA-imposed limit on loan origination fees, and therefore that they

21

were per se illegal, without the need for an individualized assessment. The court found that this approach would contradict the HUD SOPs of 1999 and 2001, which mandated a case-by-case analysis to determine if a particular YSP was illegal under RESPA. Accordingly, the court granted Irwin's motion, and decertified the class. This appeal followed.

## II. DISCUSSION

### A. District Court's Grant of Summary Judgment in Favor of Irwin

We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court. See Johnson v. Bd. of Regents, 263 F.3d 1234, 1242 (11th Cir. 2001) (citation omitted). Under that standard, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We have held that "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Johnson, 263 F.3d at 1243 (quotations and citation omitted).

The Borrowers make two arguments concerning the district court's decision to grant summary judgment in favor of Irwin. First, they argue that the law-of-the-

case doctrine obligates us to adhere to our prior rulings in this case, despite the intervening --- and conflicting --- approach taken by HUD in its 1999 and 2001 SOPs. Second, the Borrowers argue that even assuming the HUD test for liability applies to their case, summary judgment still should not have been granted to Irwin, since their evidence establishes that the YSPs Irwin paid were illegal under that test. We address each contention in turn.

1. Law-of-the-Case

The Borrowers argue that the law-of-the-case doctrine precludes us from reconsidering our holdings in the earlier Culpepper cases–specifically our holding in Culpepper III that we need not assess the "reasonableness" of the compensation Irwin paid to the mortgage brokers, and may find a RESPA violation, absent any evidence that the YSP was *directly tied* to the services that the mortgage brokers provided. The Borrowers argue that, under the law-of-the-case doctrine, we are bound by the approach that we took in Culpepper III, notwithstanding the fact that approach was expressly refuted in the HUD 2001 SOP, and notwithstanding the fact that we later held that the HUD 2001 SOP overruled Culpepper III. See Heimmermann, 305 F.3d at 1263-64.

The law-of-the-case doctrine holds that subsequent courts will be "bound by the findings of fact and conclusions of law made by the court of appeals in a prior

23

appeal of the same case." Wheeler v. City of Pleasant Grove, 746 F.2d 1437, 1440 (11th Cir. 1984) (per curiam) (citation omitted). The purpose of the doctrine is to bring an end to litigation, and to protect against the agitation, or re-litigation, of settled issues. Id. (citations omitted). Although the doctrine bars reconsideration of settled issues, however, we have stated that the law-of-the-case rule is not an inexorable command, nor does it "require rigid adherence to rulings made at an earlier step of a case in all circumstances." Murphy v. FDIC, 208 F.3d 959, 966 (11th Cir. 2000) (citation omitted). Rather, we have described the doctrine as "direct[ing] a court's discretion" rather than "limit[ing] the tribunal's power." Id. We are not bound under the doctrine to "adhere to a ruling with which we have emphatically and repeatedly disagreed." Id.

Moreover, there are three notable exceptions to the doctrine. We will not be barred from reconsidering the law-of-the-case "when (1) a subsequent trial produces substantially different evidence (2) controlling authority has since made a contrary decision of law applicable to that issue or (3) the law-of-the-case is clearly erroneous and will work manifest injustice if not if not reconsidered." Wheeler, 746 F.2d at 1440 (citation omitted).

The district court concluded that the law-of-the-case doctrine was inapplicable to the present case, and, consequently, that it was not bound to follow

24

the approach to RESPA liability taken in Culpepper III. This conclusion was proper, for two reasons. First, the doctrine's second exception applies, because the 2001 SOP constituted "controlling authority has since made a contrary decision of law applicable to that issue." See Wheeler, 746 F.2d at 1441. Moreover, the law-of-the-case doctrine is inapplicable because we are "convinced that the prior decision [Culpepper III] is clearly erroneous and would work manifest injustice" if it were blindly followed. See Murphy, 208 F.3d at 966 (citations omitted).

As to the first point, the 2001 HUD SOP constituted "controlling authority [that] has since made a contrary decision of law applicable" to the Borrowers' case. Wheeler, 746 F.2d at 1441. In Heimmermann, we stated that the 2001 HUD SOP was an agency ruling that carried the full force of law, that it was based on a permissible construction of the statute, and that it was entitled to Chevron deference by our court.[6] See 305 F.3d at 1205. Moreover, in Heimmermann, we

_____

[6] In reaching that conclusion, we cited to Satellite Broadcasting, a case in which we concluded that we are not precluded from revisiting our prior precedent in light of a subsequent and conflicting agency ruling on an issue of law, so long as (1) the prior precedent left room for the agency to speak to the question; and (2) the intervening agency regulation was not arbitrary or capricious. 17 F.3d at 347-48. Here, the Culpepper III court had found HUD's two-part RESPA test to be ambiguous, thus leaving room for HUD to step in and clarify it, as it did with the 2001 SOP. Moreover, HUD's 2001 SOP was not arbitrary or capricious. See Heimmermann, 305 F.3d at 1263. Accordingly, as in Satellite Broadcasting, we are inclined to follow the intervening agency ruling and to afford it Chevron deference.

The Borrowers argue that the HUD SOP is not entitled to Chevron deference, because (1) it is at odds with the plain meaning of the statute; and (2) HUD failed to engage in a formal notice-and-comment process before issuing its ruling. We rejected both of these arguments in Heimmermann, see 305 F.3d 1261-62, and we likewise reject them now.

25

adopted the 2001 SOP as the law of our circuit. See id. at 1263; see also Hirsch, 328 F.3d at 1309. Because the 2001 SOP constitutes "controlling authority" carrying the force of law, we our bound to follow it, rather than our earlier, contrary holding in Culpepper III. A contrary result would "wed this circuit to [an earlier] decision, while all other circuits and the Supreme Court would be bound under Chevron to defer to the [agency] rule." See Satellite Broadcasting, 17 F.3d at 348.

Moreover, we are convinced that the third exception to the law-of-the-case doctrine is applicable–that is, that the approach to RESPA liability taken in Culpepper III was "clearly erroneous," such that continuing to apply it "would work manifest injustice." See Murphy, 208 F.3d at 966. We intimated as much in Heimmermann, where we stated that the district court, by following the standard of liability of Culpepper III, had "applied *the wrong legal standard*." 305 F.3d at 1264 (emphasis added). We have repeatedly stated that the 2001 SOP had the effect of overruling Culpepper III, thereby suggesting that the approach to RESPA liability taken in Culpepper III was clearly erroneous. See id.; see also Glover v. Standard Federal Bank, 283 F.3d 953, 964 n.9, 966 (8th Cir. 2002) (rejecting the analysis of Culpepper III and querying whether the case retains any residual

26

viability in the Eleventh Circuit in the wake of HUD's 2001 SOP).  For that reason, we find that continuing to follow Culpepper III would work manifest injustice.

Because we conclude that the approach to RESPA liability taken in Culpepper III was clearly erroneous and that continuing to follow that approach would work manifest injustice, we agree with the district court that the law-of-the-case doctrine is inapplicable to the Borrowers' case.  We are not bound under the law-of-the-case to continue to follow the RESPA liability standard set forth in Culpepper III; rather, the HUD 2001 SOP test applies.  We now turn to that test in order to determine if Irwin was entitled to summary judgment as a matter of law.

2.  Whether the Borrowers' YSPs Constitute Illegal Payments Under RESPA

The Borrowers contend that even under the HUD two-step test, the district court nevertheless erred in granting summary judgment in favor of Irwin, because the YSPs Irwin paid to the Borrowers' mortgage brokers were unreasonable and illegal under the HUD test.

HUD's test for whether a YSP to a mortgage broker constitutes an illegal payment under RESPA involves two steps.  First, we ask whether the broker performed "actual services" in the course of arranging the mortgage transaction, that is, whether he performed any of the services mentioned in HUD's 1999 SOP. Hirsch, 328 F.3d at 1308-09.  If the answer to the first question is no, then a

27

RESPA violation has been established. Glover, 283 F.3d at 965. If the answer to the first question is yes, we then proceed to ask whether the total compensation was reasonable in light of the total array of services that the broker performed. See Hirsch, 328 F.3d at 1309. In undertaking this analysis, we do not ask whether the services the broker performed were linked to the YSP in particular; rather, we look at "all of the services performed and [] evaluate them in light of all the compensation (not just the YSP in isolation) the mortgage broker received from any source." Id. at 1309 n.8; 66 Fed. Reg. 53053; see also Glover, 283 F.3d at 965 (stating that step two involves an assessment of "whether any part of the total payment, including the YSP, proves to be excessive, and, thus, an unlawful referral fee").

Here, it is undisputed that the Borrowers' mortgage brokers provided them with the kinds of services listed in HUD's 1999 SOP, including, among others, taking down their information and filling out their mortgage applications; analyzing their income and debt and pre-qualifying them to determine the maximum mortgages that they could afford; collecting their financial information; and participating in their loan closings. See 64 Fed. Reg. 10085. These are

compensable services under RESPA, and thus the first step of the HUD two-part test is satisfied.[7]

We then must ask whether the total compensation paid to the mortgage brokers was unreasonable in light of the services that they performed. In the case of the Culpeppers, Premiere's compensation consisted of a loan origination fee of $760.50, as well as a YSP of $1,263.21 --- about 1.675% of the loan amount --- bringing Premiere's total compensation to $2,023.71. In the case of Hiers, HMI's compensation consisted of an origination fee of $1,544, a loan discount of $14.64, and a YSP of $4,538.87 --- approximately 2.875% of the total loan amount --- bringing its total compensation to $6,097.51.

The Borrowers do not present any evidence demonstrating that these compensation amounts were unreasonable in light of the total array of services

---

[7] The Borrowers argue that no compensable "service" was ever performed by their mortgage brokers. In support of this contention, they cite to a 1996 interrogatory in which Irwin stated that it paid a YSP to the Culpeppers' broker, Premiere, "for the right to service the loan." R6-149, Exh. 16 at 6. The Borrowers argue that this admission shows that no "service" was performed that redounded to the Culpeppers' benefit. Rather, they contend that this admission shows that the YSP was nothing more than a payment by Irwin to purchase the Culpeppers' loan, and that therefore the payment fails on the first step of the HUD liability test.

We reject this argument. HUD has stated that the YSP is not to be viewed in isolation, but as part of the total compensation to the broker. 66 Fed. Reg. 53053. HUD has also made clear that it "does not view the name of the payment"--- that is, how the parties refer to a piece of the compensation ---"as the appropriate issue under RESPA." Id. at 53054. Rather, the transaction's legality must be assessed according to the totality of the circumstances. In light of that guidance, the fact that Irwin stated in an interrogatory that it was paying "for the right to service the [Culpeppers'] loan" does not, standing alone, establish that the Culpeppers' mortgage broker did not perform any compensable services that inured to their benefit.

performed. Instead, they argue that the fact that the YSP payment did not in any way reduce their up-front closing costs establishes that they were unreasonable under RESPA. This contention fails, for two reasons. First, as discussed previously, in deciding the question of reasonableness we are instructed to assess the "total compensation" the broker received, which "includes direct origination fees and other fees paid by the borrower, indirect fees, including those that are derive from the interest rate paid by the borrower, or a combination [thereof] . . . ." 66 Fed. Reg. 53055. Second, as the district court concluded, the fact that the Borrowers' up-front closing costs were not reduced is not sufficient, standing alone, to establish that the brokers' compensation was unreasonable in light of the services that they performed. This is especially so where the services they performed otherwise appear to have aided and benefitted the Borrowers in closing their mortgage transactions.

Nor are we convinced by the Borrowers' contention that the YSP was per se unreasonable because under federal regulations a broker's compensation is limited to an origination fee of 1%. See 24 C.F.R. § 203.27(a)(2)(i). Other circuits that have considered that argument have rejected it, concluding that the limitation on mortgage broker fees set forth in 24 C.F.R. § 203.27(a)(2)(i) only applies to fees "*directly* collected [from the mortgagor], not *indirectly* collected [from the

30

lender]." See Bjustrom v. Trust One Mortgage Corp., 322 F.3d 1201, 1205 (9th Cir. 2003). Because we agree with the Ninth Circuit that 24 C.F.R. § 203.27(a)(2)(i) does not preclude a mortgage broker from collecting a YSP indirectly from a mortgage lender, we cannot accept the Borrowers' blanket contention that *any* compensation in excess of the 1% origination fee is per se unreasonable under RESPA. Such an approach would flout HUD's case-by-case inquiry to YSP payments.

In summary, the Borrowers bear the burden of demonstrating, with specific evidence, that the total remuneration that their brokers received was unreasonable, see Hirsch, 328 F.3d at 1309, in light of both objective market standards and the subjective facts of their mortgage transactions. 66 Fed. Reg. 53055. This is a burden they have failed to satisfy. Because neither of the Borrowers has submitted evidence sufficient to demonstrate that the total compensation paid to their respective brokers was somehow "unreasonable" under HUD's RESPA analysis, summary judgment was appropriate for Irwin. See, e.g., Hirsch, 328 F.3d at 1309 (affirming grant of summary judgment for the lender where the plaintiffs did not present any evidence that the total amount paid to their broker, including a YSP, was unreasonable in light of the services the broker performed); Bjustrom, 322 F.3d at 1208 (affirming grant of summary judgment to the lender on a RESPA

31

action where the plaintiff "offered no evidence to prove that her mortgage broker's services weren't worth what was paid"); Schuetz, 292 F.3d at 1014 (same). We discern no error in the district court's order.

B. District Court's Order Decertifying the Class

The Borrowers separately challenge the district court's decision to decertify the class, a decision that was reached in conjunction with the court's decision to grant summary judgment for Irwin. Under Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure, a district court may alter or amend its certification order at any time before rendering a decision on the merits. We review the propriety of a district court's decision to decertify a class for abuse of discretion. See Sikes v. Teleline, Inc., 281 F.3d 1350, 1359 (11th Cir. 2002); see also Forehand v. Fla. State Hosp. at Chattahoochee, 89 F.3d 1562, 1566 (11th Cir. 1996) ("Questions concerning class certification are left to the sound discretion of the district court.") (citation omitted). "A district court abuses its discretion if . . . it applies the wrong legal standard . . . or makes findings of fact that are clearly erroneous." Sikes, 281 F.3d at 1359 (citations and quotation omitted).

In this case, the district court concluded that HUD's SOPs had repeatedly urged a case-by-case analysis to the legality of a compensatory payment to a broker under RESPA. After concluding --- in light of the HUD SOPs as well as

32

Heimmermann --- that such an individualized, case-by-case assessment made class certification inappropriate for section 8 RESPA claims, the court decertified the class. The Borrowers contend that this was in error.

The Borrowers' case was originally certified as a class action in February of 1999, prior to both the 1999 and the 2001 SOPs. At that time, the putative class had been generally defined as "all persons" who obtained a federally insured mortgage "that was funded by Irwin Mortgage Corporation wherein the broker was paid a loan origination fee of 1% or more and wherein Irwin paid a [YSP] to the broker." R2-47 at 1. In arguing for class certification, the Borrowers had focused on the general nature of their claims, stating that "each of the class members had fallen victim to the same improper conduct as the named Plaintiffs–being sold an inflated interest rate loan in order to fund Irwin Mortgage Corporation's [] illegal referral fee to the class members' mortgage brokers." Id. at 2. The district court accepted this characterization of the Borrowers' case, stating in its certification order that class certification was proper because the Borrowers' "proof will, of necessity, be of a general nature . . . and will not be fact specific."[8] R2-59 at 9.

_____

[8] It should also be pointed out that the district court's order certifying the class in 1999 relied heavily on the "exchange" approach of the earlier Culpepper cases. See, e.g., R2-59 at 8 (stating, in certifying the class, that the YSP couldn't be a payment for "services" under section 8(c), because the YSP was "not tied in any fashion to the amount of services paid either to the Culpeppers or to the defendant"). This approach was subsequently rejected by the HUD 2001. Moreover, in Heimmermann, we reversed a certification of a class that had been based on similar legal reasoning, characterizing it as the "wrong legal standard." See Heimmermann, 305 F.3d at

33

The 2001 SOP, however, made clear that the legality of a YSP payment to a mortgage broker is to be assessed in light of the particular facts and circumstances of the borrower's transaction; the agency ruling repeatedly emphasized the individualized nature of the inquiry under RESPA. See, e.g., 66 Fed. Reg. 53054 (stating that "the legality of any [YSP] can only be evaluated in the context of the test HUD established and the specific factual circumstances applicable to each transaction in which a [YSP] is used"); id. at 53055 ("[I]t is necessary to look at each transaction individually, including examining all of the goods or facilities provided or services performed by the broker in the transaction"). HUD's recommendation that each mortgage transaction be assessed on a individual, case-by-case basis certainly calls into question the district court's original decision to certify the Borrowers' class, based on its presupposition that the Borrowers' action would "be of a general nature . . . and [would] not be fact specific." R2-59 at 9.

Moreover, in Heimmermann we reversed a class certification, based, in part, on the fact the 2001 SOP had made clear that "it [was] necessary to determine whether compensable services were provided by the broker and whether the total amount of broker compensation was reasonable in the light of the circumstances of each loan." 305 F.3d at 1264. We concluded that this interpretation militated

---

1264.

34

against certifying a class based only on the fact that all class members' brokers had received YSPs. Id. In addition, our sister circuits have concluded that class certification is inappropriate in section 8 RESPA cases, in light of HUD's 2001 SOP expressly urging an individualized assessment of compensatory payments to brokers. See, e.g., Glover, 283 F.3d at 965 (concluding that class certification is impractical in RESPA actions involving YSP payments to brokers, since HUD's SOP made clear that these transactions are "case specific" and that district courts are to undertake a "loan specific inquiry"); Schuetz, 292 F.3d at 1014 (class certification inappropriate because whether the YSP is prohibited depends on the services provided and the compensation paid "in any particular case"); see also O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 741-42 (5th Cir. 2003) (finding class certification inappropriate for a section 8(b) RESPA action because, "[c]onsistently with the HUD reasonable relationship test, individualized factfinding will be required for each transaction" and stating that the "inquiry must be performed on a transaction-by-transaction basis, because a single finding of liability based on an unreasonable relationship between goods and services does not necessitate the conclusion that such unreasonableness exists on a classwide basis").

In light of these decisions, we cannot conclude that the district court abused its discretion in finding that class certification was improper and in thereby decertifying the class. Under Rule 23(c)(1) of the Federal Rules of Civil Procedure, district courts are free to revisit the initial decision to certify a class, in light of subsequent developments in the case. See Gen. Tel. Co. of Sw. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372 (1982). Here, the district court concluded that the Borrowers' action should not have been certified as a class action in the first place, in light of both the subsequent HUD pronouncement on RESPA liability as well as our decision in Heimmermann adopting the 2001 SOP as the law of this circuit. That conclusion was not in error, and therefore we affirm the district court's order decertifying the class.

## III. CONCLUSION

The Borrowers have appealed the district court's order granting summary judgment in favor of Irwin on their section 8 RESPA claim, and the district court's separate order decertifying the class in their case. Upon review, we conclude that, based on the HUD test for RESPA liability set forth in the 2001 SOP, the Borrowers have failed to provide evidence that the total compensation Irwin paid to their mortgage brokers was unreasonable in light of the services that they provided. Therefore, Irwin was entitled to summary judgment on the Borrowers'

36

RESPA claim. In addition, we find that individual issues of fact predominate in these types of RESPA actions, and therefore, we conclude that the district court did not abuse its discretion in decertifying the class in the Borrowers' case. Accordingly, we **AFFIRM**.