**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 22, 2009

No. 09-20132
Summary Calendar

Charles R. Fulbruge III
Clerk

ANTHONY E MALUSKI,

Plaintiff-Appellant

v.

US BANK NA, as Trustee, successor by merger to Firstar Bank NA, successor
in interest to Firstar Bank Milwaukee NA, as trustee for Salomon Brothers
Mortgage Securities VII, Inc Floating Rate Mortgage Pass-Through
Certificates Series 1999-NC4,

Defendant-Appellee

PROPERTY ASSET MANAGEMENT, INC.,

Intervenor Plaintiff - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-55

Before REAVLEY, DAVIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Anthony E. Maluski appeals the district court's grant of summary judgment in favor of the appellees. Maluski sued U.S. Bank NA, alleging that a promissory note and lien securing a home equity loan were void and unenforceable under the Texas state constitution. U.S. Bank removed the suit to federal court on diversity grounds and subsequently assigned its interest in the note to Property Asset Management Inc. (PAMI), which then intervened. PAMI asserted a claim against Maluski for breach of contract and judicial foreclosure due to Maluski's default on the note. We AFFIRM.

Maluski argues that PAMI lacks standing to assert a claim under the note because the note was a negotiable instrument that was not properly transferred to PAMI. The note itself specifically provides that "the Lender may transfer this Note." The summary judgment evidence documents the assignment of the note from the original lender to U.S. Bank and from U.S. Bank to PAMI. U.S. Bank assigned its interest in the note to PAMI through a transfer of lien that was recorded on the land records. The evidence was sufficient to establish PAMI's standing. *See Dade v. Hoover*, 191 S.W.3d 886, 888 (Tex. App. 2006); *Vernor v. Southwest Fed. Land Bank Ass'n, FLCA*, 77 S.W.3d 364, 366 (Tex. App. 2002).

Maluski further contends that the note he signed is unenforceable and that the lender must forfeit all principal and interest thereon because the fees that he was charged in connection with the loan violated the state constitution. The Texas state constitution limits the amount of certain fees that lenders may charge borrowers in connection with home equity loans. *See* TEX. CONST. art. XVI, § 50(a)(6). It specifically provides that lenders

> [may] not require the owner or the owner's spouse to pay, in
> addition to any interest, fees to any person that are necessary to
> originate, evaluate, maintain, record, insure, or service the

extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit.

*Id.*

Maluski argues he was charged fees exceeding three percent of his loan principal, which was $116,250. The HUD-1 statement shows $5,557.95 in fees that were subject to the three percent cap. It also shows, however, that Maluski was given a closing cost credit of $2,070.45, meaning that the total fees were actually $3,487.50, exactly three percent of the principal amount. Maluski argues that U.S. Bank admitted that it lacked evidence of how the credit was applied, and he speculates that a portion of the credit could have been applied to interest points charged at closing, which were not subject to the three percent cap. We are unpersuaded. The settlement statement clearly shows that Maluski was not actually charged fees of more than three percent of the principal loan. His unsubstantiated argument of how the credit theoretically could have been manipulated is insufficient to defeat summary judgment. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Maluski also argues that he was charged fees in excess of the three percent cap because the HUD-1 statement reflects that a yield spread premium was paid outside of closing by the lender to the mortgage broker. He contends this fee was ultimately passed on to him. We agree with the district court's assessment of this claim. Interpretation of the Texas state constitution requires that "we rely heavily on its literal text and [we] must give effect to its plain language." *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 344 (Tex. 2001). The literal text of the Texas constitution protects the "owner or the owner's spouse" from paying the prohibited fees. TEX. CONST. art. XVI, § 50(a)(6). Here, the HUD-1

3

statement reflects that the lender paid the yield spread premium to the broker, not Maluski. Although the lender may ultimately recoup the payment due to Maluski paying a higher interest rate over the life of the loan, this indirect payment is not contemplated by a plain reading of the state constitution. *Cf. Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201, 1205 (9th Cir. 2003) (yield spread premium paid by lender to broker was not "'collect[ed] from the mortgagor,'" and a plain reading of Federal Housing Administration regulation that limited the mortgagee's fees to one percent of the principal amount covered fees collected directly, not indirectly, from the mortgagor) (citation omitted).

AFFIRMED.