# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00756-CV

**Ellen E. Abernathy, Appellant**

**v.**

**Deutsche Bank National Trust Company, in Trust for the Benefit of the Certificate Holders of Soundview Home Loan Trust 2005-OPT1, Asset-Backed Certificates Series OPT1, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT NO. 06-516-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This dispute concerns whether fees charged Appellant to obtain a home equity loan violated the Texas Constitution. Both parties filed motions for summary judgment. The trial court granted the bank's motion and denied Appellant's motion. We will affirm the summary judgment.

## BACKGROUND

Appellant Ellen E. Abernathy obtained a home-equity loan in 2005. She executed a Texas Home Equity Adjustable Rate Note dated February 22, 2005, in the principal amount of $88,000.00, payable to Option One Mortgage Corporation (hereafter "Option One" or "the Lender"). She also executed a Deed of Trust securing the loan. Option One assigned the note and deed of trust to Deutsche Bank (hereafter "the Bank"), which stepped into the shoes of Option One. Abernathy ceased making payments a few months after the loan closing.

Abernathy executed a HUD-1 Settlement Statement (hereafter "HUD-1") setting out an accounting of the financial transaction and settlement costs in connection with the closing of the loan. In addition, she executed a Texas Equity Discount Points Acknowledgment form, acknowledging that she paid $1,760.00 in points to obtain a better interest rate. The lender also signed a Discount Points Acknowledgment confirming the points Abernathy paid. The record also includes a form Abernathy signed and agreed to entitled "Texas Instructions to Closing Agent," which sets out instructions to the closing agent for disbursement of payments to the Broker and to the Lender.

The loan proceeds paid off Abernathy's existing loan of $49,628.02, and she received $32,863.09. The issue on appeal concerns the balance remaining at closing and whether the fees charged Abernathy to obtain the loan violated the Texas Constitution.

## STANDARD OF REVIEW

Appellate review of a summary judgment is de novo. Where both sides file motions for summary judgment and the trial court grants one and denies the other, the appellate court reviews the evidence submitted by both parties, determines all questions presented, and renders the judgment that the trial court should have rendered. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## DISCUSSION

An adult person's homestead is protected by the Texas Constitution from forced sale for the payment of all debts, except for an extension of credit that

does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit . . . .

Tex. Const. art. XVI, § 50(a)(6)(E) (hereafter "the Three Percent Fee Cap" or "the Fee Cap"). Thus, a home-equity borrower cannot be required to pay fees for these purposes that exceed three percent of the principal amount of the loan.

Three percent of Abernathy's $88,000.00 loan is $2,640.00, the Fee Cap on her transaction. The parties agree that Abernathy could not be required to pay fees in excess of this amount—in addition to interest—to originate, maintain, record, insure, or service her loan. The charges for Abernathy's loan exceeded the Fee Cap. The parties agree that Option One gave Abernathy a Lender Credit of $2,640.00, the exact amount of the Three Percent Fee Cap, to reduce her fees at closing.

The parties further acknowledge that not all expenses relating to obtaining a home-equity loan in excess of three percent violate the Fee Cap. For example, they agree that discount points, per diem interest charges, and funds placed in escrow reserve are not counted against the Three Percent Fee Cap. Abernathy's charges for these expenses totaled $2,904.19, and the parties do not dispute that Abernathy's payment of these costs in addition to the Fee Cap did not violate the constitution. The parties' positions diverge at this point.

Abernathy agrees that Option One correctly calculated the amount of its Lender Credit at $2,640.00, an amount that could reduce her fees to a legal amount. However, she asserts that the Lender failed to apply the credit to the closing costs in a manner that resulted in her paying fees

3

within the constitutional limit. She asserts that her summary-judgment evidence proves that she paid fees of more than three percent of the loan amount to obtain her loan and, therefore, judgment should be rendered in her favor.

As Abernathy states, this appeal does not involve the interpretation of the constitution, nor does it involve a determination of the kinds of charges includable in the Three Percent Fee Cap. We note also that it does not include a question of what charges constitute interest. *See Finance Comm'n of Tex. v. Norwood*, No. 10-0121, 2013 WL 3119481 (Tex. June 21, 2013).

Instead, Abernathy asserts that this case is a matter of simple accounting and turns solely on how the Lender Credit was applied at closing. She contends that if, at closing, the credit was applied by the closing agent to costs wholly includable within the Three Percent Fee Cap, so as to reduce the remaining fees she paid to three percent of the loan or less, then the transaction was constitutional. If, however, the closing agent applied some or all of the Lender Credit to costs not includable within the Fee Cap, leaving an excessive balance of Fee Cap fees for her to pay, then the manner in which the closing agent disbursed the funds caused her to pay more than three percent, and, therefore, her loan runs afoul of the constitution. Both parties cite to the case of *Maluski v. US Bank NA*, 349 Fed. Appx. 971 (5th Cir. 2009) (per curiam), as support for their positions. In *Maluski*, the court held that the HUD-1 showed that the amount of lender credit given the borrower brought the fees within the cap and declined to speculate how the lender credit applied. *Id.* at 972-73. The borrower in *Maluski* argued, like Abernathy, that the Lender Credit was correct but that the credit was applied to expenses in such a way as to cause him to pay excessive fees. There the court looked to the HUD-1 in the absence of proof as to how the credit was applied. *Id.*

4

Abernathy claims that she has proof. She relies primarily upon the document entitled Texas Instruction to Closing Agent, rather than the HUD-1, as conclusive proof of her position. By her theory, the instructions prove that the Lender Credit was not applied so as to reduce her fees to a constitutional level. Unlike the borrower in the *Maluski* case, who had only the HUD-1 as evidence on which to speculate, Abernathy argues that the closing instructions prove how the Lender Credit was applied in her transaction. She contends that it was applied to charges that included both Fee Cap and non-Fee Cap expenses, leaving her to pay a balance that included Fee Cap charges in excess of three percent.

The instructions show that the closing agent reduced the cash amount to be disbursed to the Lender by the amount the Lender was obligated to give Abernathy for the Lender Credit, leaving the net sum of $996.19 due the Lender. The Broker was to receive $2,911.70 for charges that fall within the Fee Cap such as appraisal, broker fee, processing fee, and other costs that relate to obtaining the loan. No deductions were made to these costs, as the Broker was entitled to receive the full amount. That does not prove the source of funds from which the Broker received his payment. Abernathy contends, however, that because the Lender Credit reduced the amount disbursed to the Lender rather than the amount disbursed to the Broker, she clearly paid $2,911.70 in fee costs—a sum above the three percent level. The instructions she relies upon only reflect the amount of the remaining cash the closing agent was to disburse to the Lender and to the Broker for such expenses as closing costs, interest, and escrow. It is not a full accounting of the transaction.

Abernathy also relies upon the deposition of Lisa Clary, an Option One employee, who was questioned about the instruction sheet. Clary was not the closing agent on Abernathy's

5

transaction and had no personal knowledge of the matter. She tendered an affidavit stating that Abernathy was given a credit on her fees of $2,640.00. At her deposition, she reviewed the instruction sheet and stated, as is clearly shown, that the Lender's side of the ledger was reduced by the amount of the credit and the Broker's side of the ledger was not. That fact is not inconsistent with a constitutional transaction.

The Bank, on the other hand, relies upon the HUD-1 settlement statement of the actual settlement costs to reflect the total accounting of receipts and disbursements of the transaction. Under the Bank's theory, this document provides evidence that the transaction met the constitutional restrictions. The trial court agreed.

The first page of the HUD-1 settlement statement reflects funds to Abernathy of $88,000.00 loan proceeds plus a Lender Credit to Abernathy of $2,640.00 paid by Option One by or in behalf of the borrower. The second page lists all of the charges in connection with the transaction, showing total settlement charges of $8,148.89. This list of expenses includes $2,904.19 in costs that both parties agree do not count against the Fee Cap. Thus, the statement reflects $5,244.70 in charges includable within the Fee Cap. The Bank contends that the Lender Credit should be applied to this balance. *See Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 793 (5th Cir. 2010). Once the $5,244.70 balance is reduced by the Lender Credit of $2,640.00, the amount chargeable to and payable by Abernathy totalled $2,604.70, a sum less than the Fee Cap. The Bank contends that this evidence proves that Abernathy did not pay fees that exceed the Fee Cap.

None of the summary-judgment proof reflects the exact order in which the credits, deductions, and disbursements were made or the checks written, and we do not believe that this

step-by-step proof is required to determine the issue at hand. A closing agent's clerical process and manner of disbursing funds cannot determine the constitutionality of a transaction.

Abernathy's position requires the court to view the total transaction in a manner that violates the constitution, rather than complies with the constitution. The proof shows that the fees for the transaction totaled $8,148.89. In determining the Fee Cap, non-Fee Cap charges of $2,904.19 must be deducted. Thus, fees attributable to the Fee Cap for this transaction totaled $5,244.70. The lender gave Abernathy a $2,640.00 credit to reduce her costs in connection with obtaining this loan, an amount that exactly matched the Fee Cap. The fact that the disbursing agent reduced the Bank's disbursement by this amount merely reflects the agent's method of determining the net cash due the Bank after payment of the Lender Credit. It does not prove where the credit was applied. The Lender Credit was for the borrower, and after crediting the borrower with the Lender Credit of $2,640.00 to reduce her fees, we hold that Abernathy paid only $2,604.70 in fees, a sum within the constitutional limit.

## CONCLUSION

We hold that Abernathy's motion for summary judgment was properly denied. We affirm the trial court's summary judgment in favor of the Bank.

_____

Marilyn Aboussie, Justice

Before Justices Pemberton, Rose, and Aboussie*

Affirmed

Filed:   August 8, 2013

*  Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment.
        *See* Tex. Gov't Code § 74.003(b).